351 So.2d 484 (1977)
STATE of Louisiana, Appellee,
v.
David BALLARD, Appellant.
No. 59567.
Supreme Court of Louisiana.
October 10, 1977.
*486 Barry F. Viosca, Orleans Indigent Defender Program, New Orleans, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Charles Brandt, Asst. Dist. Atty., for appellee.
PER CURIAM.
The defendant was convicted of armed robbery, La.R.S. 14:64, and sentenced to 49½ years at hard labor. He appeals his conviction and relies upon three assignments of error. Of these, Assignment 4 poses a serious issue. It concerns the use of "other crimes" evidence to prove system, La.R.S. 15:445.
The defendant is charged with the armed robbery of John Lowe on May 26. In aid of its proof of the contested issue of identity, the state (after appropriate Prieur pre-trial notice and showing) introduced proof of a robbery of Robert Daigle accomplished two days earlier, by a similar modus operandi.
The issue presented is very substantial and extremely close. A majority of the court has ultimately decided, however, that the trial judge did not abuse his discretion in finding that the probative value exceeded the prejudicial effect of the admission of the evidence of the other crime.

(1)
La.R.S. 15:446 literally provides: "* * * where the offense is one of a system, evidence is admissible to prove . . . the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged." Thus, another offense may be used to prove guilty knowledge (i. e., to negate an innocent explanation for an admitted action) or intent (such as where specific intent must be proved). State v. Slayton, 338 So.2d 694 (La.1976); State v. Medlock, 297 So.2d 190 (La.1974).
However, knowledge and intent are not here at issue: The offender undoubtedly had the requisite general criminal intent to commit the robbery, while no innocent explanation is advanced (or could be, under the present facts) which makes guilty knowledge relevant to determine whether the conduct is unlawful. See State v. Slayton, 338 So.2d 694 (La.1976); State v. Clark, 338 So.2d 690 (La.1976); State v. Jordan, 276 So.2d 277 (La.1973).
Nevertheless, beyond the literal terms of the statute, jurisprudentially this court has held to be admissible, for limited purposes, proof of other crimes exhibiting almost the identical modus operandi or system, committed in close proximity in time and place. State v. Jones, 332 So.2d 466 (La.1976) (a pre-Prieur trial); State v. Price, 325 So.2d 780 (La.1976); State v. Vince, 305 So.2d 916 (La.1974); State v. Lawrence, 294 So.2d 476 (La.1974).
As the jurisprudence has clarified, not only must the other crime be distinctively similar in system, State v. Slayton, 338 So.2d 694 (La.1976), State v. Waddles, 336 So.2d 810 (La.1976), State v. Hicks, 301 So.2d 357 (La.1974), but the proof of the other crime as part of the system must be relevant to prove a fact of consequence to the accused's present innocence or guilt (independent of the inadmissible purpose to infer that the accused committed the present crime because he had committed the other one). State v. Ledet, 345 So.2d 474 (La.1977); State v. Frederick, 340 So.2d 1353 (La.1976); State v. Gaines, 340 So.2d 1294 (La.1977); State v. Hicks, 301 So.2d 357 (La.1974); State v. Harrison, 291 So.2d 782 (La.1974).
As summarized by us in State v. Gaines, cited above, at 340 So.2d 1297-98:
"Thus, the recent opinions of this court closely analyze the two transactions in order to determine whether they both exhibit such peculiar modes of operation to distinguish them as the work of one person. If this can be shown, then the evidence of the extraneous crime is highly relevant to identity, because the inference would be strong that the person who committed the other crime was the same person who committed the crime at bar (not because he is a `bad man,' nor because *487 of a proclivity toward such conduct, but because it is so unlikely that another person would carry out the crime in such a manner). In such cases the identification of the perpetrator of the extraneous crime is highly probative of the identity of the perpetrator of the crime for which the defendant is on trial and, thus, the evidence does not solely tend to prove the defendant's bad character."
Of course, as the cited decisions emphasize, not only must the other crime evidence first be found relevant to a material fact actually at issue, but the probative value must outweigh its prejudicial effect. See State v. Ledet, 345 So.2d 474 (La.1977). In emphasizing the limited purposes for which other-crime evidence may be used, and the limitations upon its use even for such purposes, Ledet summarizes the governing values in the exercise of the trial judge's limited discretion to admit it, 345 So.2d 478:
"* * * Because of the substantial risk that the extraneous evidence may detract from the constitutional right to be presumed innocent until proven guilty beyond a reasonable doubt of the crime charged, other crimes can only be admitted after a `showing by the State that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant's bad behavior, and that it serves the actual purpose for which offered.'"

(2)
In the present case, the occasion for the state's use of the other crimes evidence seems questionable. The victim of the robbery positively identified the accused as the man who had robbed him. In addition, the state introduced a confession of the accused implicating him in the crime.
On the other hand, the only witness to the crime was the victim. Although he positively identified the accused as his robber in court, his identification was subject to defense attack because the robber had covered his face with a red handkerchief. In the victim's words: "He had a red handkerchief. He had his hand and held it over his mouth * * *." The robber held a gun in his other hand.
Aside from an attack on the voluntariness of the confession, the accused's chief defense was to question the victim's identification of the face-hidden robber as the accused.
The Lowe robbery occurred when the robber, with face half-hidden by a red handkerchief, came up to Lowe, a truck deliveryman, as he was unloading from the rear of his truck.
The other crime, the Daigle robbery two days earlier in the same neighborhood, likewise occurred as a deliveryman was in his truck preparing to make a delivery. The robber likewise came up with a gun in one hand and red handkerchief over the lower part of the face. The victim (Daigle) likewise positively identified the accused as his robber, even though his face had been half-hidden at the time of the robbery.
The red handkerchief and the gun were positively identified by both victims as those used in their respective robberies.
A majority of the court has concluded that the trial court did not abuse its discretion in finding the other-crime evidence relevant to the real issue as to the victim's identification of the accused. The issue was not only whether the bushy-haired robber, with face half hidden, was indeed the accused, but also whether the victim could in fact identify anyone under such circumstances.
Arguably enough (so that a majority cannot say the trial court abused its discretion), the other-crime evidence was relevant to this hotly-contested issue, with probative value exceeding its prejudicial effect. The positive identification by the other victim of the accused as also robbing him by a distinctively similar technique relevantly tended to prove: (1) that his positively-identified robber was indeed the present robber, having the same description and using the same technique) and (2) that the robber identified by the present victim could be identified, despite the handkerchief covering *488 the lower portion of the face and despite the lack of previous acquaintanceship and the excitement of the circumstances.
We therefore do not find merit in this substantial assignment of error, despite the persuasive arguments of the defendant's counsel.

(3)
The other two assignments do not present insubstantial issues, although we do not find reversible merit in them:
(a) Assignment 8: The trial judge was in error in permitting the district attorney to read an excerpt from one of our opinions as to what constitutes a dangerous weapon. See State v. Elam, 312 So.2d 318 (La.1975). Such a practice may "cause the jury to give undue weight to those statements or portions of the charge identified with a court pronouncement." 312 So.2d 321. Nevertheless, while the assignment is not insubstantial (the defense argument was that the unworkable child's pellet pistol was not the sort of dangerous weapon that justified an armed robbery charge), we are not convinced that reversible error occurred, in the absence of claim that the excerpt misstated the law or that it could not have been properly paraphrased by counsel so as to give the same view to the jury.
(b) Assignment 11: In rebuttal argument, the prosecutor, over defense objection, demonstrated that a handkerchief over his face did not prevent the jury from identifying him. Even a courtroom demonstration by a sworn witness is subject to the requisite foundation of similarity of circumstances, see McCormick on Evidence, Section 215 (2d ed. 1972). While a demonstration during closing argument is permissible if founded on the evidence, State v. Roy, 220 La. 1017, 58 So.2d 323 (1952), the possibility of prejudice by the present demonstration is real.[1] A majority has nevertheless concluded that, in total context, the error, if any, is not reversible; the record does not sufficiently demonstrate that the handkerchief covering the robber's face really prevented clear recognition of his features, nor that the prosecutor did not cover his face in the same (possibly unconcealing) manner as the witnesses ascribed to the robber.

Decree
Accordingly, we affirm the conviction and sentence.
AFFIRMED.
SUMMERS, J., concurs in the decree.
DIXON and CALOGERO, JJ., dissent.
TATE, J., dissents and assigns written reasons.
TATE, Justice, dissenting.
The writer believes that the marginally correct admissibility of the other-crime evidence (Assignment 4), when cumulated with the prejudice resulting from the improper demonstrative closing argument of the prosecutor (Assignment 11), require a reversal.
I should note an additional reason for my uneasiness with an affirmancei. e., for my ultimate conclusion that admission of the other-crime evidence was unduly prejudicial:
The robbery occurred through use of a child's pellet pistol, unworkable (according to the state's witness). Since it was real in appearance, the jury could find it to be a dangerous weapon.
*489 Nevertheless, a substantial part of the defendant's argument was that, at most, he should be convicted of simple (not armed) robbery. Whatever merit this equitable argument had for the jury was doubtless dispelled by admission of the other crimebut two simple robberies should not equal one armed robbery.[1]
Looking at the strength of the state's case (a positive identification by the victim, plus a confession), this very well may have been the purpose of the state's introduction of the other-crime evidencethat is, not to bolster identification (well-proved otherwise), but by cumulative effect to argue that the other (simple?) robbery tended to prove the accused was also guilty of this armed (?) robbery: However, the effect is to argue that the accused is an armed (not simple) robber because he is a bad man, a traditionally prohibited use of other-crime evidence.
I therefore respectfully dissent.
NOTES
[1] Here, neither of the armed robbery victims ever saw the defendant without a red bandanna handkerchief obscuring his face. The prosecutor was allowed, over defense counsel's objections, to show the members of the jury that they could recognize him with a handkerchief over his face.

The dangers inherent in such a demonstration are obvious. The jury, after observing the prosecutor for several hours during the course of the trial, would certainly recognize him even with his face partially obscured. This demonstration has no relevance to the question of whether the victim would recognize a robber whom he had never seen before, when the perpetrator's face was similarly obscured.
[1] On this issue, note also assignment 8, where the prosecutor improperly read and cited a supreme court decision defining a dangerous weapon, thuscontrary to our decisionadding the weight of the supreme court to his argument, whereas the jury is supposed to take the law from the judge's instructions, not from argument of counsel.