743 So.2d 757 (1999)
STATE of Louisiana
v.
Donald R. ROSS.
No. 98-KA-0283.
Court of Appeal of Louisiana, Fourth Circuit.
September 8, 1999.
*758 Harry F. Connick, District Attorney, Charles E.F. Heuer, Assistant District Attorney, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
Kevin V. Boshea, Gretna, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY III, Judge MICHAEL E. KIRBY.
KIRBY, Judge.
The defendant, Donald Ross, was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1. He was arraigned and pled not guilty. A motion to suppress the evidence and a statement was filed. The trial court denied the motion to suppress the evidence and granted the motion to suppress the statement in part. The State *759 sought writs to this Court, which were denied. State v. Ross, 95-K-1154 (La. App. 4th Cir. 6/19/95), unpub. The Louisiana Supreme Court denied writs. State v. Ross, 95-KK-1798 (La.10/27/95), 661 So.2d 1367, unpub. A jury found the defendant guilty of manslaughter, a violation of LSA-R.S. 14:31. The defendant filed a motion for new trial or a motion for post verdict judgment of acquittal, which the trial court denied. The defendant was sentenced to forty years at hard labor. He filed a motion to reconsider sentence, which the trial court denied. The defendant now appeals.

FACTS:
Dr. Susan Garcia, the forensic pathologist, testified that the victim died from a gunshot wound to the forehead where the gun had been fired at close range. The victim's blood tested negative for alcohol or drugs.
Officer Troy Oliver testified that on November 26, 1994, he was at the Fourth District police station when he saw three people walking up to the station around 3:00 p.m. One was holding a weapon "up" and was holding a law enforcement identification badge. One of the men stepped forward, identified himself as Donald Ross, and said that he wanted to turn himself in regarding an incident on Mardi Gras Boulevard. Oliver confiscated the weapon, handcuffed the defendant, who seemed very upset, and transported him to Homicide. The defendant told him that he had acted in self-defense. Later, Homicide called Oliver and asked him to transfer the defendant to Charity Hospital because he had become nauseated. Oliver observed no injuries on the defendant.
Deputy Thomas Bryson of the Jefferson Parish Sheriff's Office said that on October 10, 1994, he wrote a report of a simple battery that had occurred at Oakwood Shopping Center in which the defendant pushed, shoved, and choked Eloise Williams.
Detective Marco Demma testified that he assisted the lead investigator, Detective Norman McCord, in the investigation of this crime. He knew that McCord had put out an arrest warrant for the defendant on the day of the crime, and that the defendant turned himself in later that day. Demma read the defendant his rights after he was arrested, and the defendant then told him that he had acted in self-defense after the victim Freddie Jackson first fired at him. He declined to make any further statement. Later, as the officers were preparing necessary documents concerning the charges, the defendant again said that he had fired in self-defense after Jackson first fired at him. The defendant told investigators that his gun was fired twice. The first shot was a discharge of the weapon that went through the roof of his car. The second shot he fired over his shoulder in the direction of Jackson. He said that he had gone to the home of his ex-girlfriend, Eloise Williams, to talk to her. He turned in a weapon he had used in the crime.
On cross-examination, Demma said that he had gone both to Williams's apartment in the 1800 block of Lawrence Street, where the shooting occurred, and the location where the body of Jackson was discovered: inside of a vehicle underneath the Mississippi River Bridge, near the intersection of Brenda and Mardi Gras Boulevard. A loaded blue steel revolver was found lodged between the passenger seat and door. In the cylinder were three live cartridges and two spent ones. Demma said that two bullets were recovered: one from the driver's door, which had been fired from outside the car, and the other from the brain of the victim.
Detective McCord said that he responded to the call of the shooting at 7:55 a.m. on November 26, 1994. He found the truck with its engine running, its windshield wipers on, and the driver's door open. There was a bullet hole in the bottom half of the driver's door. The driver's window was open, and the victim lay *760 across the front seat with his head on the passenger side. The lower part of his body was on the floor of the driver's side. He found the gun with three live rounds and two spent casings on the passenger side of the truck. Williams was at the scene, and she directed the officers to 1807 Lawrence. McCord interviewed Williams and her sister, and then obtained an arrest warrant for the defendant. Officers went to 2112 Eighteenth Street in Harvey to look for the defendant, but he was not there. Later McCord learned that the defendant had turned himself in. The defendant was arrested and advised of his rights, and then he made a statement that he had acted in self-defense. He said he did not want to make a further statement, but as paperwork was being prepared, he again said that he had acted in self-defense, that the victim shot at him first, and that he did not understand how the whole thing happened. The defendant said that he had fired twice: once through the roof of his own vehicle, and once over his shoulder through the vehicle's open window.
Eloise Williams said she had grown up with Jackson, but in 1994 started to date him. Previously, she had dated the defendant for six or seven years, but they had broken up in July before she started dating Jackson in October although she and the defendant remained friends. In October she was seated in a car outside a drug store in the Oakwood Shopping Center with the window cracked. The defendant appeared and began choking her through the window saying that she had to marry him or that he would kill her. She filed a police report. During the week of Thanksgiving, the defendant began driving by her house and calling her, saying that if Jackson walked through her door, he would kill her. On the morning of the crime, as she was preparing to drive to work, she saw the defendant pull up in his car. He stopped, pointed a gun at her and said, "Bitch I ought to kill you now." Jackson, who was standing nearby, told her to get into her car, and that he would follow her to work. The defendant maneuvered his car in the apartment complex until Jackson's car ended up between Williams's car and his car. The defendant fired the gun at Jackson. Williams pulled off and went to the home of her sister. She heard two shots before she got to her sister's. Then she saw the two men driving down the street with Jackson behind the defendant. She heard three more shots. She called the police, and then went back home to try to page Jackson. When she got no response, she drove in the direction she had seen the men go. She saw Jackson's car on the neutral ground with an ambulance nearby. She said Jackson always carried a gun, but that she had never seen him fire it.
The defendant's sister, Constance Jackson, testified for the defense that she called her brother one day in October of 1994 to pick her up at the drugstore in Oakwood Shopping Center. When he arrived, she saw him speak to Williams, but said no fight occurred. She stated that on November 26, 1994, Williams called her and told her that the defendant was outside her house and that she was going to call Jackson (the victim) and tell him to "go behind" the defendant with a gun. Later that morning she called to say that Jackson had been killed.
The defendant's mother, Florence Forges, said that the defendant and Williams were still dating in September of 1994, and that he regularly gave her money. She said that on the day of the crime, the defendant had borrowed her car. He told her that Jackson came "behind him shooting" and that he accidentally shot the roof of the car. Forges saw the bullet hole in the roof. She said she and her husband kept the gun that was used in the crime in the car for protection.
Landry Forges, a Jefferson Parish Sheriffs Deputy and brother of the defendant, said he escorted the defendant to the police station when he surrendered himself and the weapon.
*761 Joan Sinegal said Williams had threatened her on more than one occasion concerning events not related to this crime.
The jury examined the car and witnessed the hole in the roof.
The defendant took the stand and said that he and Williams had dated for five years, ending on the day after Labor Day the year the crime was committed. He often gave her money for her support and the support of her children, of whom he was fond. While he was dating Williams, he was also dating Della Mae Andrews to whom he subsequently became engaged. Williams knew that the defendant was dating Andrews and was not happy when she and defendant broke up. He spoke to Williams several times the week of the shooting. On the night before the crime, he was supposed to meet her at Boomtown Casino, but he fell asleep. The next morning, he had an angry message on his answering machine from Williams because he had not met her as promised. He went to her house, and Williams and Jackson were coming down the stairs. He left the scene. Williams and Jackson got into their cars. The defendant then realized he needed gas so he turned around in the apartment complex. After he turned around, Jackson's car was first in line, followed by Williams's, and then his. Jackson pulled around and started cursing and threatening the defendant. He aimed a gun out of the car at the defendant. The defendant reached for the gun that he knew was in his car, and in his nervousness fired at the roof. He drove off and passed by Williams's sister's house. Then Jackson appeared behind him, shooting at him. He fired over his shoulder to try to stop Jackson. He did not know that he had hit him. He stopped at a gas station to get some gas and heard others talking that a shooting had occurred nearby. Later that day, he called his mother's house and learned that he was wanted for the shooting. He went to her house where he met his brother, and the two men then drove to the police station. When an officer drove him to Homicide, he told him that he had acted in self-defense. Later at Homicide, he told officers that he had gone by his girlfriend's house, and that Jackson had started firing at him.

ASSIGNMENTS OF ERROR ONE AND TWO:
The defendant argues his sentence was excessive and that the trial court erred in denying his motion to reconsider sentence.
At the sentencing hearing, the State called Shirley Jackson, the mother of the victim; Calvin Jackson, brother of the victim; and Fredtrena Rainey, daughter of the victim, who testified as to their loss.
Florence Forges, the defendant's mother; Della Andrews, the defendant's fiance'; Donald Ross, Jr., the defendant's son; and Bertha Molison, a family friend, were called by the defense and testified that they believed the defendant's assertion that he acted in self-defense.
Keith Stewman, pastor of the defendant's family's church, testified to the suffering of the defendant's family.
Robert Jordan, who played in a band, Louisiana Purchase, with the defendant, appealed for leniency.
Delores Jackson, a member of the defendant's church, said that he came from a good family.
The State introduced a certified copy of the defendant's conviction for aggravated assault on Brian Lockett, which had been committed with a handgun.
During argument, the State revealed that this earlier conviction was for a 1988 incident, which occurred under an almost identical situation. The defendant in fact shot at an ex-girlfriend's new boyfriend through the door of a car.
Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment." A sentence within statutory limits is constitutionally excessive if it is "grossly out *762 of proportion to the severity of the crime" or is "nothing more than the purposeless and needless imposition of pain and suffering." State v. Caston, 477 So.2d 868 (La. App. 4th Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with the Article 894.1 is found, the reviewing court must determine whether the sentence is imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Caston, supra; State v. Quebedeaux, supra.
In this case, the judge heard extensive testimony from both sides that concerned the mitigating and aggravating circumstances surrounding this crime. He noted that he considered the sentencing guidelines and article 894.1. The judge found that the crime was unfortunate and that the prevalence of guns in the community contributed heavily to the crime. However, he noted that the incident had not been between two "eighteen year old hot heads" but two grown men. He noted that the defendant had gone to the home of Williams early in the morning. He also noted that the victim Jackson probably fired his gun twice before the defendant fired the fatal shot. As such, the judge said he could understand why the jury found the defendant guilty of manslaughter rather than second degree murder in order to give the defendant a "break" from life imprisonment. Accordingly, we find that the judge adequately complied with article 894.1.
Once adequate compliance with article 894.1 is found, the court may consider whether the sentence is excessive in light of sentences imposed by other courts in similar circumstances. This sentence is not excessive in light of the jurisprudence. In State v. Bowman, 95-0667 (La.App. 4 Cir. 7/10/96), 677 So.2d 1094, writ denied, 96-2070 (La.1/31/97), 687 So.2d 400, this Court affirmed a thirty-three year manslaughter sentence for a sixteen-year-old first offender who drove the car but did not pull the trigger in a drive-by shooting. Moreover, maximum or near maximum sentences for manslaughter convictions have been affirmed in several cases where the defendant had no prior convictions. Cf. State v. Maxie, 594 So.2d 1072 (La. App. 3 Cir.1992), writ denied, 598 So.2d 372 (La.1992); State v. King, 563 So.2d 449 (La.App. 1 Cir.1990), writ denied, 567 So.2d 610 (La.1990).[1]
The trial court has great discretion in sentencing within statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983). A sentence should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Washington, 414 So.2d 313 (La.1982). In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court reimposed the trial court's forty-year manslaughter sentence on a youthful defendant; in that opinion the Supreme Court stated:
On appellate review of sentence, the only relevant question is "`whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'" [Citations omitted]. For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const. Art. I, § 20, i.e., when it imposes "punishment disproportionate *763 to the offense." [Citation omitted]. In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, [citation omitted], a remand for resentencing is appropriate only when "there appear[s] to be a substantial possibility that the defendant's complaints of an excessive sentence ha[ve] merit." [Citation omitted].

(Id.).
In this case, evidence was presented that the defendant actively stalked Williams. He choked her in a parking lot and threatened to kill her. He went to her house early in the morning, evidently knowing that she would be there, carrying a gun. He shot and killed her new boyfriend. He had committed a similar crime years before against another former girlfriend's new boyfriend, although in that case the victim lived. He refused to take responsibility for this crime, maintaining his innocence throughout the proceedings. We find no merit in defendant's argument that his sentence is excessive.

ASSIGNMENTS OF ERROR THREE AND FOUR:
By these assignments, the defendant argues that the State did not present sufficient evidence to support the conviction and that the trial court erred in denying the motion for new trial or post verdict judgment of acquittal. Specifically, the defendant argues that the State did not prove that he did not act in self-defense.
A homicide is justifiable if it is committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La. R.S. 14:20(1). However, a person who is the aggressor or who initiates a conflict cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21. When a defendant claims self-defense, the State has the burden of establishing beyond a reasonable doubt that he did not act in self-defense. State v. Garcia, 483 So.2d 953 (La.1986); State v. Dozier, 553 So.2d 911 (La.App. 4 Cir. 1989). writ den. 558 So.2d 568 (La.1990).
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based upon proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. The question presented is whether the defendant acted without justification. Accordingly, the relevant inquiry is whether a rational factfinder, after viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that defendant did not act in self-defense. State v. Rosiere, 488 So.2d 965 (La.1986).
In considering a self-defense claim, it is necessary to consider whether defendant had a reasonable belief that he was in imminent danger of losing his life or receiving great bodily harm and whether the killing was necessary, under the circumstances, to save defendant from that danger. State v. Dozier, 553 So.2d at 913. Although there is no unqualified duty to retreat, the possibility of escape is a factor in determining whether or not a defendant had the reasonable belief that deadly force was necessary to avoid the danger. Id.
In this case, the State presented evidence that the defendant went to Williams's house in the early morning hours armed with a gun. He had threatened Williams before and knew that she was seeing the victim. The coroner testified that the victim was shot at close range, which refuted the testimony of the *764 defendant that he had randomly fired at the victim from some distance. The jury may therefore have chosen not to believe the defendant. Williams testified that the defendant started shooting at the victim without provocation. The jury could therefore have found that the State proved that the defendant did not act in self-defense. The trial court did not err in denying the motion for post verdict judgment of acquittal or for new trial.
These assignments are without merit.

ASSIGNMENTS OF ERROR FIVE AND SIX:
By these assignments, the defendant alleges that the State erred in allowing the introduction of other crimes evidence, specifically evidence of the battery committed on Williams in the parking lot. He also argues that the trial court erred in denying a motion for new trial on this basis.
The State filed a Notice of Intent to Use Evidence of Other Crimes. A Prieur hearing was held on March 22, 1996. After hearing testimony, the trial court granted the State's motion to use other crimes evidence. The defendant sought this court's supervisory jurisdiction, and this court denied writs, finding that the relator had an adequate remedy on appeal. State v. Ross, 96-K-0815 (La.App. 4th Cir., 5/2/96), unpub. The Supreme Court denied writs. State v. Ross, 96-KK-1339 (La.9/3/96), 678 So.2d 554, unpub.
In State v. Johnson, 97-1701 (La. App. 4 Cir. 5/27/98), 716 So.2d 403, this Court stated the applicable law regarding the introduction of other crimes evidence as follows:
Article 404B of the Louisiana Code of Evidence permits the use of other crimes evidence for purposes other than to prove the character of the person in certain circumstances. These purposes may include proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident.
La. C.E. art. 404(B)(1) reads as follows:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparations, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
In State v. Prieur, 277 So.2d 126 (La. 1973), the supreme court held that there must be clear and convincing evidence that the defendant committed the other crime before such evidence could be admissible. The Louisiana Code of Evidence originally did not affect the clear and convincing standard in regard to other crimes evidence set forth in Prieur and its progeny. C.E. art. 1103 and Comment (k) to C.E. art. 404. However, the Legislature subsequently enacted La. C.E. art. 1104 and repealed Article 1103, thereby changing the State's burden of proof at the Prieur hearing to only a preponderance of the evidence standard as is required by the federal courts. State v. Crawford, 95-1352 (La. App. 3 Cir. 4/3/96), 672 So.2d 197, writ denied 96-1126 (La.10/4/96), 679 So.2d 1379.
* * * * * *
In State v. Moore, 534 So.2d 1275, 1278 (La.App. 4 Cir.1988) writ denied, 560 So.2d 21 (La.1990), this Court reviewed the requirements for other crimes evidence:
Because of the substantial risk of grave prejudice from evidence concerning unrelated acts of misconduct, courts generally disallow testimony concerning other crimes committed by a defendant. State v. Prieur, 277 So.2d 126, 128 (La.1973). The rationale for the Prieur rule is that the *765 state must prove beyond a reasonable doubt that the accused committed the crime with which he stands charged in order to establish guilt. State v. Ledet, 345 So.2d 474, 477 (La.1977). Evidence that the defendant may have committed the charged offense simply because he is a bad man who committed other crimes on other occasions is not sufficient to establish guilt. Id. Certain exceptions to the Prieur rule have been developed, both by statute and by jurisprudence. Under LSA-R.S. 15:445 and 446 [now C.E. art. 404], evidence of acts similar to the charged offense is admissible to show intent, knowledge or system. Additionally, the Louisiana Supreme Court has allowed evidence of other crimes exhibiting almost the identical modus operandi or system, committed in close proximity in time and place. State v. Ballard, 351 So.2d 484 (La.1977).
Furthermore, to be admissible, the modus operandi in both the charged offense and the uncharged offense must be so peculiarly distinctive that one must logically believe they are the work of the same person. Moreover, the use of the other crimes evidence must be substantially relevant for a purpose other than to show that the defendant has the propensity to commit crimes. Rather, it must tend to prove a material fact genuinely at issue. Lastly, the probative value of such evidence must outweigh its prejudicial effect. Id. (citations omitted).
Id. at 4-6, 716 So.2d at 405-406.
In the instant case, the State's notice listed three acts involving the defendant and his former girlfriend, Eloise Williams. The first, occurring on October 10, 1994, was an alleged battery on Ms. Williams by the defendant (complained of here). The second, occurring on October 2, 1994, involved telephone threats and harassment by the defendant toward Ms. Williams. The third incident was described as the defendant riding around Ms. Williams' home and making threatening calls to her children on the same date, November 22, 1994. None of the incidents resulted in a conviction of the defendant, although Ms. Williams did lodge police or Municipal court complaints regarding the first two.
Defendant killed Freddie Jackson on November 26, 1994, approximately six weeks after the incident involving the alleged battery of Williams by defendant in the shopping center parking lot. The killing occurred in the presence of Ms. Williams when the victim, who was Ms. Williams' new boyfriend, was leaving the Williams' residence. The trial court found that the incident was admissible to show the defendant's motive.
The defendant first argues that the evidence of these incidents should not be admissible because there were no adjudications, and thus the evidence is not sufficient. He argues that the prejudicial effect greatly outweighs the probative value. He further notes that the State was not required to prove motive.
As to the defendant's first contention, at the hearing, the State presented the testimony of Ms. Williams regarding each of the incidents. She testified in detail about the defendant putting his hands around her neck and threatening to kill her (the October 10, 1994 battery). She testified to making a report to the police and a warrant being issued for the defendant. She also described the October 2, 1994 and November 22, 1994 telephone threats when the defendant told her she "was going to be dead before Thanksgiving". She recounted that the defendant repeatedly told her that if he could not have her, no one could. The trial court apparently found Ms. Williams to be a credible witness. We find no reason to disturb this finding. Ms. Williams' testimony alone was sufficient to establish by a preponderance of the evidence that the incidents occurred.
The evidence was highly relevant and probative to show the defendant's motive *766 and intent, permissible reasons to introduce the testimony under La. C.E. art. 404(B)(1). It was critically so here because the defendant, who turned himself into the police almost immediately after the shooting, told the police in two statements that the shooting occurred in self-defense after the victim opened fire on him. Furthermore, the trial court determined that the evidence of these other acts was not overwhelmingly prejudicial because the acts themselves were not serious or violent crimes. This determination by the trial judge was not an abuse of his discretion and will not be disturbed.
These assignments are without merit.
For the reasons stated above, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] The maximum sentence at the time these defendants were sentenced was twenty-one years.