835 So.2d 850 (2002)
STATE of Louisiana
v.
Clifford DOLEMAN.
No. 2002-KA-0957.
Court of Appeal of Louisiana, Fourth Circuit.
December 4, 2002.
*853 Harry F. Connick, District Attorney, Julie C. Tizzard, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Mary Constance Hanes, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge STEVEN R. PLOTKIN, Judge DENNIS R. BAGNERIS, SR., Judge DAVID S. GORBATY).
STEVEN R. PLOTKIN, Judge.
This is a criminal appeal of a conviction for armed robbery in violation of La. R.S. 14:64, which resulted in a sentence of one hundred ninety eight years as a second felony habitual offender. Appellant urges that the trial court erred in denying defendant's motion to recuse the judge, in failing to impose sanctions on the State when one of its witnesses violated a sequestration rule and in imposing an excessive sentence. In addition, the appellant, pro se, argued that the State engaged in prosecutorial misconduct and that the trial court erred in quashing a defense subpoena for the trial judge. For the following reasons, the conviction and sentence are affirmed.

PROCEDURAL HISTORY
Defendant Clifford Doleman was charged by bill of information on October 27, 1994 with armed robbery, a violation of La. R.S. 14:64, and possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. Defendant pleaded not guilty at his November 8, 1994 arraignment. The trial court denied defendant's motions to suppress on January 30 and March 29, 1995.[1] Trial commenced on September *854 26, 1995, but a mistrial was declared that same date after the jury was unable to reach a verdict. On January 23, 1996, defendant was tried and found guilty as charged on the armed robbery count by a twelve-person jury. On February 9, 1996, defendant was adjudicated a second-felony habitual offender and sentenced to one hundred and ninety-eight years at hard labor, without benefit of probation, parole or suspension of sentence. On April 9, 1996, the State entered a nolle prosequi as to count two, the charge of possession of a firearm by a convicted felon. On July 2, 1997, this court affirmed defendant's conviction and sentence.[2]
On January 14, 2000, in response to defendant's petition for writ of habeas corpus, citing the State's failure to provide him with a transcript of his first trial for use at his second trial, the United States District Court for the Eastern District of Louisiana effectively ordered that defendant be retried.[3] This decision was affirmed by the U.S. Court of Appeals for the Fifth Circuit.[4] On April 18, 2001, the trial court denied defendant's motion to suppress the evidence. On April 25, 2001, defendant was tried by a twelve-person jury and again found guilty as charged of armed robbery. On May 9, 2001, the trial court denied two motions for new trial filed by defendant, and a motion in arrest of judgment. On June 13, 2001, defendant was again adjudicated a second-felony habitual offender and sentenced to one hundred ninety-eight years at hard labor, without benefit of parole, probation or suspension of sentence. The court denied defendant's motion to reconsider sentence, and granted his motion for appeal.

STATEMENT OF FACTS
New Orleans Police Officer Neville Payne testified that on August 30, 1994, he responded to an armed robbery at a Walgreens drugstore located at the corner of St. Claude and Caffin Avenues.[5] He was met by the manager, Mr. Saulny, who gave the officer an identification card that was dropped by the robber, which card belonged to defendant. Officer Payne interviewed three other witnesses, Ms. Washington, *855 Ms. Pleasant and Ms. Gusman. The officer recovered a rusty, sawed-off shotgun in some hedges on St. Claude Court, right behind the Walgreens. A pair of sunglasses and a baseball cap were also recovered. Officer Payne broadcast a description of the suspect, and of the vehicle in which he fled.
Officer Payne admitted that neither Mr. Saulny, Ms. Pleasant or Ms. Gusman were able to give him a description of the suspect's clothing and physical characteristics. He was confronted with his testimony given at a prior proceeding that they had provided a description of the suspect. Officer Payne confirmed that Ms. Jackie Robinson observed defendant place the shotgun in the hedges. After refreshing his memory by reviewing his police report, Officer Payne stated that Ms. Robinson gave him a general description of the person with the shotgun as a very dark, very thin black male of unknown height, wearing blue clothing. Ms. Robinson described the suspect's vehicle as brown over light brown in color, with a temporary tag in the window. It was noted that Officer Payne testified at one prior proceeding that the two-toned dark brown/light brown vehicle was possibly a Maxima, but testified at another proceeding that he broadcast a description of the vehicle over the police radio as a two-toned brown "possible Nissan Sentra or Nissan."
Alisha Washington testified that she was working at the Walgreens drugstore at St. Claude and Catherine Avenues at the time of the robbery. She identified defendant as a person she saw using a pay telephone at the drugstore that day. Ms. Washington testified that defendant looked suspicious, because he was paying more attention to what was going on around him than the conversation he was having. Ms. Washington then entered the drugstore and began speaking with Mr. Saulney. Defendant entered the store, but then walked back outside to the pay phone. Ms. Washington then exited the store to check on her children, who were in her car. She testified that defendant was using the pay telephone again and that it was at that time that she got the best look at him. She described him as dark-skinned, wearing a black t-shirt, blue jeans, tennis shoes and a baseball cap. She also stated that he was wearing sunglasses when she first saw him in the phone booth, but he was not wearing them when she went back to her car to check on the children.
Ms. Washington testified that she then walked back into the store and noticed the defendant entering in front of her. Defendant walked toward the office; and Ms. Washington walked toward the cosmetics counter. She subsequently heard someone in the front of the store talking loudly and screaming, but she did not actually witness the robbery. Ms. Washington gave a description of defendant while talking to the employees and concluded from that discussion that defendant was the robber. Ms. Washington later talked to police, and a week later was presented with a photographic lineup. She selected defendant's photograph, although after considering another photograph.
Ms. Washington was confronted with her testimony from prior hearings that she did not remember whether the person she saw was wearing a hat. Ms. Washington's prior testimony indicated that she testified that the defendant had sunglasses on every time she saw him. The State and defendant stipulated that the sunglasses found at the scene, which had been introduced in evidence, belonged to defendant. Ms. Washington testified that she considered defendant to be tall, but was confronted with her prior description that the person she had seen was "maybe" five feet, five inches tall.
*856 New Orleans Police Officer James Adams testified that he stopped a vehicle defendant was driving on August 30, 1994, at approximately 8:00 p.m. Officer Adams first observed defendant driving over the St. Claude Avenue Bridge in a brown and beige four-door Maxima, with a temporary tag, which matched the description of a vehicle involved in an armed robbery. After making the stop, Officer Adams approached the vehicle and noticed a shoe box full of coins in bank wrappers. Officer Hunter, who had arrived to assist, removed a large wad of cash from defendant's shirt pocket. According to Officer Adams, defendant explained that an unknown man threw a shoebox of money at him, and that he simply picked it up. Defendant's clothing was confiscated, including blue sweatpants and a black ski mask. Officer Adams did the follow up investigation, showing the photographic lineup to either two or three witnesses. Officer Adams testified that all witnesses picked out defendant's photograph.
Officer Adams was confronted with his prior testimony wherein he said defendant was driving a black Impala. However, Officer Adams testified that this was an error in the transcript and that he was certain that defendant had been driving a Maxima.
New Orleans Police Officer Richard Hunter assisted Officer Payne in the investigation of the armed robbery. He observed Officer Adams discover the shotgun. He later assisted Officer Adams in the arrest of defendant. He found the large wad of money in defendant's shirt.
Glenda Gusman testified that she was working at the Walgreens drugstore at the time of the robbery. She and the manager Mr. Saulny were in the office. Defendant entered and pointed a short double-barreled shotgun at Mr. Saulny. Betty Pleasant entered the office during the robbery. Before leaving, defendant forced Ms. Pleasant to tape up Mr. Saulny. He then forced Ms. Pleasant and Ms. Gusman to lie on the floor. She identified defendant's photo in the lineup shown to her, and identified defendant in court.
Stanley Saulny testified that he was the manager of the Walgreens drugstore at the time of the robbery. He said defendant pointed a shotgun at his head, threatened to shoot him, and robbed him. Before defendant left the office he threatened to kill the employees if they followed him. After they observed defendant leave on a video monitor, Mr. Saulny went outside to see what kind of car defendant was driving. He noticed that defendant had dropped some coin trays outside, along with his sunglasses and his picture identification card.

ERRORS PATENT
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1
In appellate counsel's first assignment of error, defendant claims that the trial court erred in denying defendant's motion to recuse the trial judge.
After defendant's case was set for a new trial, he filed a motion to recuse the presiding judge on the grounds of bias, prejudice or personal interest, and an inability to be fair and impartial, pursuant to La. C. Cr. P. article 671(A)(1) & (6). Defendant claimed that during his original sentencing the trial judge expressed his personal belief that defendant should die in prison.
La. C. Cr. P. article 671(A) provides that in a criminal case a judge shall be recused when, among other things, he:
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
* * *

*857 (6) Would be unable, for any other reason, to conduct fair and impartial trial.
A trial judge is presumed to be impartial. State v. Edwards, 420 So.2d 663, 673 (La.1982); State v. Mims, 97-1500, p. 38 (La.App. 4 Cir. 6/21/00), 769 So.2d 44, 69. State v. Parker, 96-1852, p. 15 (La.App. 4 Cir. 6/18/97), 696 So.2d 599, 607. For a defendant to be entitled to the recusal of a judge in a criminal case on the grounds of bias or prejudice, the claim must be of a substantial nature, based upon more than conclusory allegations. Parker, 96-1852 at p. 15, 696 So.2d at 607; State v. Walton, 469 So.2d 1204, 1206 (La. App. 4 Cir.1985). If any of the six grounds for recusal set forth in La. C. Cr. P. article 671 are proven, there is no discretion, the judge shall be recused. In re: Lemoine, 96-2116, p. 12 (La.1/14/97), 686 So.2d 837, 844, reasons amended in part on rehearing, (La.4/4/97), 692 So.2d 358.
In originally sentencing defendant to one hundred ninety-eight years at hard labor after his 1996 trial and conviction, the court stated:
The Court, Mr. Doleman, obviously feels that you should never be back on the streets and for that reason the Court is going to give you the maximum sentence the Court can. The Court obviously understands that you will not be able to serve the entire sentence but the Court wants this sentence to be a message to any future pardon or parole board that might consider your applications that at least they'll know this Court thinks you should die in Angola.
In denying defendant's motion to recuse, the trial court cited State v. Kendrick, 96-1636 (La.App. 3 Cir. 6/25/97), 699 So.2d 424. In Kendrick, the defendant argued on appeal that the trial judge had been biased and unfair. During sentencing, the trial judge indicated that he did not believe the defendant's assertions of innocence with respect to some counts other than the two to which he had pleaded guilty. The appellate court held that the defendant had waived his right to raise the issue because he had not filed a motion to recuse the judge. Id. at p. 15, 699 So.2d at 432. The court also stated that the one statement did not show bias and would not have supported a motion to recuse had one been filed. Id. at p. 15, 699 So.2d at 433.
In the instant case, in addition to the statement made by the trial judge at the first sentencing, defendant cites a colloquy between himself and the trial judge that was initiated by defendant at his sentencing in the instant case. Defendant was afforded the opportunity to make a statement before sentencing. Defendant informed the trial judge that he would be back from Angola, and the court would send him to Angola again, and he would be back, and so on, "until you die or I die." The trial court sentenced defendant, and then told defendant a story about a now-deceased Criminal District Court judge. A defendant told the now-deceased judge that the judge would die before him, and the now-deceased judge responded that the defendant might be right, but that the defendant was going to die on the inside and he was going to die on the outside.
The trial judge in the instant case imposed the same maximum sentence on defendant that he had imposed after defendant's 1996 trial and conviction. In imposing sentence, the judge adopted the reasons given at the previous sentencing. He noted that defendant had a prior armed robbery conviction for which he had served time in prison. He also noted that defendant had confessed to numerous other armed robberies after his 1980 arrest for armed robbery. The record reflects that in 1980 defendant was arrested and charged with twenty-five other *858 armed robberies, a residence burglary, one count of attempted murder, and with being a fugitive from St. Bernard Parish on a warrant for bank robbery. However, prosecution apparently was initiated only on two counts of armed robbery and one count of simple burglary of in inhabited dwelling. Defendant pleaded guilty to one count of armed robbery and the other two counts were dropped. The trial court noted that defendant pointed a sawed-off shotgun at the Walgreens manager, and threatened to kill him and the two female employees.
The trial judge's candid statement at the first sentencing that he believed defendant should die in prison simply reflected the court's position that defendant was just the type of incorrigible, dangerous criminal the legislature had in mind in enacting the Habitual Offender Law, which effectively provided for the one hundred ninety-eight year maximum sentence, without benefit of parole, probation or suspension of sentence, for a second-felony offender convicted of armed robbery. The court's comment also reflected the reality that defendant could never complete the sentence and be released from prison.
Although defendant has the benefit of a full and complete record, he fails to cite a single trial court ruling or action that he alleges was motivated by bias or prejudice toward him, other than the sentencing. Under these circumstances, it cannot be said that defendant has proven that the trial judge should have been recused on the ground that he was biased, prejudiced or personally interested in the cause such that he was unable to conduct a fair and impartial trial, or that for any other reason the trial judge was unable to conduct a fair and impartial trial.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, defendant claims that the trial court erred in failing to impose sanctions under La. C.E. article 615(C), due to Officer Adams' alleged violation of the sequestration rule by talking to Mr. Saulny and Ms. Gusman.
La. C. Cr. P. article 764 formerly covered the exclusion or sequestration of witnesses. That article now states that the exclusion of witnesses is governed by La. C.E. article 615. Under La. C.E. article 615(A), the court on its own motion may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom and refrain from discussing the facts of the case with anyone other than counsel. La. C.E. article 615(C) authorizes sanctions for violation of the sequestration order, including contempt, instructions to the jury, or disqualification of the witness when other sanctions are insufficient.
The purpose of the sequestration article is to prevent witnesses from being influenced by the testimony of earlier witnesses, and to strengthen the role of cross-examination in developing the facts. State v. Castleberry, 98-1388, p. 28 (La.4/13/99), 758 So.2d 749, 772; State v. Chester, 97-2790, p. 8 (La.12/1/98), 724 So.2d 1276, 1282. The mere fact that a State witness speaks to another witness does not establish a violation of the sequestration order and does not show prejudice. State v. Strickland, 94-0025, p. 43 (La.11/1/96), 683 So.2d 218, 236. A trial court's decision whether to impose a sanction for violating a sequestration order will not be disturbed absent an abuse of discretion. State v. Gilmore, 529 So.2d 859, 864 (La.App. 4 Cir.1988); see also State v. Julian, XXXX-XXXX, p. 10 (La.App. 4 Cir. 3/14/01), 785 So.2d 872, 878.
Defendant timely objected concerning the alleged violation of the sequestration *859 rule, after purportedly receiving a note from Sylvia Atkinson. The trial court delayed addressing the matter until after the jury had retired to deliberate, at which time Ms. Atkinson testified. She stated that after Officer Adams testified, he exited the courtroom and was talking to others. However, Ms. Atkinson said that she was sitting in what she characterized as a "lobby," and that Officer Adams was in the hallway. She admitted that she could not see specifically to whom Officer Adams was talking, saying only that he was talking to a bunch of people in the hallway. She said Mr. Saulny, the Walgreens manager, and Ms. Gusman, a Walgreens employee, had been in the hallway when she came back from lunch. Ms. Atkinson further testified that another officer also came out and was discussing his testimony. Although Ms. Atkinson stated that they were laughing and joking about some of the things to which people had testified, she admitted that she could not recall any specifics as to the contents of Officer Adams and the unidentified officer's discussions with the people in the hallway.
The trial court determined that Ms. Atkinson's testimony failed to establish "any specifics" as to one witness learning something from another witness such that the former could thereby "shade" his or her testimony.
Defendant claims that the alleged violations of the sequestration order were harmful to him because his entire defense strategy was to impeach witnesses based on their prior testimony concerning the identifications. He argues that the trial court should have disqualified Mr. Saulny or Ms. Gusman as witnesses, or at least strongly admonished the jury about the violation of the sequestration order, and submits that the court's failure to do so constitutes reversible error.
Defendant notes that his first trial in 1995 ended in a hung jury, implicitly suggesting that the guilty verdict in the instant 2001 trial was due to collusion between witnesses in the hallway. However, it can be noted that defendant was retried in January 1996 and convicted then, in addition to being convicted in the instant trial.
The violation of a court's sequestration order operates to undermine the public's faith in its judicial system. However, Ms. Atkinson's testimony was vague and conflicting. She admitted she did not know to whom Officer Adams, or the other unnamed officer, were talking, given that she was sitting in a lobby or foyer between the hallway and the courtroom. She was also vague as to what she heard either officer say. It cannot be said that the trial court erred in essentially finding that defendant failed to prove a violation of the sequestration order. It cannot be said that the trial court's conclusion was in error.
This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 3
In this last assignment of error by appellate counsel, defendant claims that his sentence was constitutionally excessive.
Article I, section 20 of the Louisiana Constitution explicitly prohibits excessive sentences; State v. Baxley, 94-2982, p. 4, (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Brady, 97-1095, p. 17 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272, rehearing granted on other grounds, (La.App. 4 Cir. 3/16/99); State v. Francis, 96-2389, p. 6 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, grant of post conviction relief on other grounds affirmed, XXXX-XXXX (La.App. 4 Cir. *860 2/6/02), 809 So.2d 1132. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 94-2982 at p. 10, 656 So.2d at 979, citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir. 1987). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 676; State v. Webster, 98-0807, p. 3 (La.App. 4 Cir. 11/10/99), 746 So.2d 799, 801, reversed on other grounds, State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2982 at p. 9, 656 So.2d at 979; State v. Hills, 98-0507, p. 5 (La.App. 4 Cir. 1/20/99), 727 So.2d 1215, 1217.
In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La. C. Cr. P. article 894.1, and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189; State v. Robinson, 98-1606, p. 12 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 127. If adequate compliance with La. C. Cr. P. article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Ross, 98-0283, p. 8 (La.App. 4 Cir. 9/8/99), 743 So.2d 757, 762; State v. Bonicard, 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, 185.
Defendant was sentenced to the maximum sentence permissible as a second-felony habitual offender convicted of armed robbery, one hundred ninety-eight years at hard labor without benefit of probation, parole or suspension of sentence, twice the longest sentence provided for a first conviction of armed robbery. La. R.S. 14:64(B) and La. R.S. 15:529.1(A)(1)(a).
In sentencing defendant, the trial court cited its reasons set forth at the previous sentencing. At that earlier sentencing, the court specifically stated that it found that none of the mitigating factors listed in La. C. Cr. P. article 894.1 applied to defendant's case. Conversely, the court stated that it found that there was an undue risk that defendant would commit another crime, that he was in need of correctional treatment, and that a lesser sentence would deprecate the seriousness of defendant's crime. The court noted defendant's prior conviction for armed robbery, in 1980, for which defendant received a sentence of twenty years at hard labor. The court noted that defendant was released from prison and committed the armed robbery in the instant case within one year. The court noted that defendant had put a sawed-off shotgun in the face of Mr. Saulny and threatened to kill him and the two female employees in the office. The court noted that defendant had confessed to twenty other armed robberies. As previously noted, the record reflects that in 1980 defendant was arrested and charged with twenty-five other armed robberies, a residence burglary, one count of attempted murder, and with being a fugitive from St. Bernard Parish on a warrant for bank robbery. Defendant pleaded guilty to one count of armed robbery in 1980 and the State dropped a second count of armed robbery and one count of simple burglary of an inhabited dwelling. Finally, as previously noted, the trial court made it clear *861 that the sentence was intended to insure that defendant would never be released from prison.
Defendant notes as mitigating factors that no one was injured in the Walgreens robbery, that he was cooperative when stopped and arrested, and that there was never any indication that he was involved with drugs. It is questionable whether this latter factor is mitigating or not, with defendant essentially conceding that he was not a drug addict driven by his addiction to commit robberies. Defendant asserts in his brief that he has the support of family members who want to help him. However, he offers no support for this claim. Finally, defendant, who was forty-five years old at the time he was sentenced in the instant case, submits that there is a "real possibility" that he can turn his life around.
Maximum sentences of one hundred ninety-eight years for second-felony offenders convicted of armed robbery have been upheld as constitutional. See State v. Donahue, 408 So.2d 1262 (La.1982) ("The extended imprisonment is not needless and purposeless, but done to negate the appellant's opportunity to commit such crimes in the future."); State v. Curtis, 363 So.2d 1375 (La.1978).
In the instant case, ensuring that defendant will never again be able to threaten the life another law-abiding citizen by putting a sawed-off shotgun into his or her face is a measurable contribution to acceptable goals of punishment, and does not constitute the purposeless infliction of pain and suffering. Accordingly, it cannot be said that the sentence is unconstitutionally excessive.
This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. 1
In his first pro se assignment of error, defendant contends that the trial court and prosecution knowingly presented false testimony to obtain his conviction.
Where a prosecutor allows a State witness to give false testimony without correction, a reviewing court must reverse the conviction if the witness's testimony reasonably could have affected the jury's verdict, even if the testimony goes only to the credibility of the witness. Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959); State v. Broadway, 96-2659, p. 17 (La.10/19/99), 753 So.2d 801, 814; State v. Williams, 338 So.2d 672, 677 (La.1976). To prove a Napue claim, the defendant must show that the prosecutor acted in collusion with the witness to facilitate false testimony. Broadway, 96-2659, p. 17, 753 So.2d at 814. Furthermore, fundamental fairness, i.e., due process, is offended "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Napue, 360 U.S. at 269, 79 S.Ct. 1173. When false testimony has been given under such circumstances, the defendant is entitled to a new trial unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial. Broadway; 96-2659 at p. 17; 753 So.2d at 814; Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). However, the grant of a new trial based upon a Napue violation is proper only if: (1) the statements at issue are shown to be actually false; (2) the prosecution knew they were false; and (3) the statements were material. United States v. O'Keefe, 128 F.3d 885, 893 (5th Cir.1997).
Defendant focuses on issues he covered during cross-examination of various witnesses. He cites testimony of Walgreens manager Mr. Saulny and Officer Adams concerning whether Mr. Saulny made an identification of defendant in a photo lineup and/or was shown photos or a *862 photo lineup. Defendant also cites Mr. Saulny's testimony from a motion to suppress hearing at which Officer Adams testified that Mr. Saulny did not see the robber's face, that he did not wish to see the robber's face, and that all he recalled was a shotgun pointed at his head. Defendant cites allegedly conflicting testimony by Officer Adams as to how many photo lineups he showed Walgreen employee Ms. Pleasant, and whether he showed one to Ms. Robinson, the witness who saw a person discard the sawed-off shotgun. Finally, defendant cites conflicting testimony by Officer Neville Payne.
However, defendant merely establishes instances of conflicting testimony of different witnesses. The mere fact that witnesses testified differently at different proceedings does not prove that they testified falsely. At best, such conflicting testimony indicates that they may have recalled things differently at a 1995 proceeding than they did at a trial six years later. Furthermore, it cannot be presumed that prosecutor has knowledge that a witness's answer is false simply because the witness may have testified somewhat differently at a prior proceeding.
Defendant fails to show a Napue violation because he fails to show that any testimony was false and that the prosecutor knew any testimony was false.
This assignment of error has no merit.

PRO SE ASSIGNMENT OF ERROR NO. 2
In this assignment of error, defendant claims that the trial court erred in quashing his subpoena of the trial judge. Defendant claims he was prejudiced by this action, as it would have permitted him to show that Mr. Saulny lied to the jury about identifying defendant as the robber, "because the trial court stipulated such, during defendant's motion to suppress hearings." Defendant cites an instance during his motion to suppress hearing held on March 24, 1995, in which the trial court sustained an objection by the State as to a question of Mr. Saulny as to what he did with the identification card he found. The State objected as to relevancy, and the trial court stated: "Objection sustained. He didn't make an I.D." The trial court later sustained another relevancy objection for the same reason. Neither of these actions by the trial court constituted a "stipulation" by the trial court. There had been prior testimony that Mr. Saulny had not made an identification of defendant in an identification procedure. Defendant suffered no prejudice from being unable to call the trial judge as a witness to be questioned as to why he sustained these two objections.
This assignment of error has no merit.

CONCLUSION
Based on the foregoing, we find no reversible error was committed in the proceedings below. Therefore, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Defendant filed numerous applications for supervisory writs, as follows:

State v. Doleman, unpub., 95-0963 (La.App. 4 Cir. 5/12/95) (writ deniedadequate remedy on appeal; request for stay denied), writ denied, 95-1306 (La.6/2/95), 654 So.2d 1116, writ denied, 95-2691 (La.11/17/95), 663 So.2d 708.
State v. Doleman, unpub., 95-1463 (La.App. 4 Cir. 8/22/95) (writ denieddelay in trial due to defense continuances, motion for speedy trial premature).
State v. Doleman, unpub., 95-2184 (La.App. 4 Cir. 10/4/95) (writ deniedsame claims considered and rejected in 95-0963).
State v. Doleman, unpub., 95-2686 (La.App. 4 Cir. 1/4/96) (writ granted in partas to transferring motion for production of transcript to trial court for hearing; writ denied otherwise).
State v. Doleman, unpub., 96-0066 (La.App. 4 Cir. 1/22/96) (writ deniedrepetitious regarding motion for production of transcript from first trial).
State v. Doleman, unpub., 96-0360 (La.App. 4 Cir. 2/29/96) (writ deniedadequate remedy on pending appeal), writ denied, 96-0639 (La.3/22/96), 669 So.2d 1211.
State v. Doleman, unpub., 96-0675 (La.App. 4 Cir. 4/17/96) (writ deniedmotion to recuse district judge moot because remaining charges nolle prosequied), writ denied, XXXX-XXXX (La.5/25/01), 793 So.2d 169.
State v. Doleman, unpub., 97-2822 (La.App. 4 Cir. 2/4/98) (writ deniedas to denial of motion to correct illegal sentence; no merit to motion to recuse trial judge from consideration of any future post-conviction proceedings).
State v. Doleman, unpub., 98-0551 (La.App. 4 Cir. 4/28/98) (writ deniedno error in denial of application post conviction relief).
State v. Doleman, unpub., 98-1041 (La.App. 4 Cir. 6/24/98) (writ deniedfirst five claims previously reviewed and found to be without merit; claim in supplemental application for post conviction relief not supported by facts).
State v. Doleman, unpub., 98-1690 (La.App. 4 Cir. 7/29/98) (writ deniedclaims without merit), writ denied, 98-2268 (La.1/29/99), 736 So.2d 822.
State v. Doleman, unpub., 98-2462 (La.App. 4 Cir. 11/18/98) (writ deniedon showing made), writ denied, 98-3069 (La.1/29/99), 736 So.2d 840.
State v. Doleman, unpub., 98-2861 (La.App. 4 Cir. 12/16/98) (writ deniedon showing made).
State v. Doleman, unpub., 99-0692 (La.App. 4 Cir. 5/16/99) (writ deniedno error in denial of motion for new trial).
State v. Doleman, unpub., XXXX-XXXX (La.App. 4 Cir. 4/5/00) (writ denied).
State v. Doleman, unpub., 2000-2463 (La.App. 4 Cir. 1/10/01) (writ granted in partas to trial court's denial of application for post conviction relief on ground of untimeliness; appellate action pretermitted as to claims asserted therein).
State v. Doleman, unpub., XXXX-XXXX (La.App. 4 Cir. 2/16/01) (writ deniedmoot).
State v. Doleman, unpub., XXXX-XXXX (La.App. 4 Cir. 4/24/01) (writ deniedno error in denial of motion to recuse trial judge; adequate remedy on appeal as to denial of motions to suppress), writ denied, XXXX-XXXX (La.5/25/01), 793 So.2d 169.
State v. Doleman, unpub., XXXX-XXXX (La.App. 4 Cir. 7/12/01) (writ deniedadequate remedy on appeal as to denial of motion for new trial), writ denied, 2001-2075 (La.5/31/02), 816 So.2d 865.
State v. Doleman, unpub., 2001-2096 (La.App. 4 Cir. 12/7/01) (writ deniedmoot, appellate counsel assigned), writ denied, XXXX-XXXX (La.4/12/02), 812 So.2d 667.
[2] State v. Doleman, unpub., 96-1946 (La.App. 4 Cir. 7/2/97), 698 So.2d 73, writ denied, 97-2278 (La.1/16/98), 706 So.2d 974.
[3] Doleman v. Cain, (E.D.2000), 2000 WL 42209.
[4] Doleman v. Cain, 245 F.3d 791 (5 Cir.2000).
[5] While the transcript refers to Catherine Avenue, the correct name of the street is believed to be Caffin Avenue.