# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-52

**STATE OF LOUISIANA**

**VERSUS**

**PAUL DAVID HEIDER**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 295,083
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## OSWALD A. DECUIR
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Billy Howard Ezell, Judges.

**CONVICTIONS AND SENTENCES AFFIRMED.**

**W.T. Armitage, Jr.**
**Assistant District Attorney**
**P. O. Drawer 1472**
**Alexandria, LA 71309**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Edward K. Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Paul David Heider**

**DECUIR, Judge.**

Defendant, Paul David Heider, was charged with vehicular homicide and third degree feticide, in violation of La.R.S. 14:32.1 and 14:32.8.

The trial court conducted a *Daubert* hearing to determine the admissibility of scientific evidence for use at trial. A portion of the testimony was explicitly perpetuated for later use at trial. After a bench trial, the court found Defendant guilty on both counts. Defendant was sentenced to five years at hard labor without benefit of parole, probation or suspension of sentence for vehicular homicide and a consecutive term of five years at hard labor for third degree feticide.

Defendant now seeks review by this court, assigning five errors.

## FACTS

On November 1, 2008, Defendant ran a stop sign in Alexandria and struck the car that the pregnant victim was riding in, killing her and her unborn child.

## ASSIGNMENTS OF ERROR NOS. 1 & 4

Defendant argues these assignments together in his brief. He first argues that the evidence was insufficient to support either of his convictions. His fourth assignment of error argues that the trial court erred by requiring him to prove he was a chronic marijuana user. Much of Defendant's argument addresses the vehicular homicide conviction, so we will analyze that part of his argument first.

Analysis of sufficiency arguments requires the appellate court to view the evidence in the light most favorable to the prosecution and only affirm if the state has proved the elements of the crime beyond a reasonable doubt. *State v. Kennerson*, 96-1518, (La.App. 3 Cir. 5/7/97), 695 So.2d 1367. La.R.S. 14:32.1 defines vehicular homicide as the killing of a human being while the offender is under the influence of a controlled dangerous substance. In this case, the only

element disputed was whether Defendant was under the influence of a controlled dangerous substance.

Defendant now argues the State failed to prove he was under the influence of a controlled dangerous substance. Central to this contention is his other argument that the court improperly placed on him the burden of proving he was a "chronic" user of marijuana. Whether Defendant could be so classified was the focus of the opinions of the four experts who testified regarding whether the level of marijuana found in his blood indicated he was impaired at the time of the crash. While delivering the verdict, the trial judge mentioned the experts and the relative weight he gave to the testimony of each. The court concluded:

> So therefore, I'm going to find that the State, and this is the crux of the matter, I find that 1.1 nanograms /per ml and the carboxyl derivatives the metabolite at 27.6 nanograms /per ml is evidence that the defendant was under the influence of a controlled dangerous substance at the time of the wreck.
>
> The question is if there was -- the experts agree that if he was a chronic user, he could have a 1.1 and not be impaired. I find that he is not a chronic user and that 1.1 means that he is an impaired individual and should not have been drive -- operating a motor vehicle.

The essential point of the judge's reasoning is that he did not believe the evidence showed Defendant was a "chronic user."

Defendant argues the court's reasoning required him to demonstrate that he was a "chronic user" and thus forced him to carry a burden of proof to negate the State's evidence that he was impaired. He argues that his defense was directed at negating an element of the crime, rather than presenting a legal excuse after the elements were established. He cites *State v. Cheatwood*, 458 So.2d 907 (La.1984) for the principle that the distinction he draws leads to separate burdens of proof. Although the supreme court reversed the defendant's conviction, we note its concluding language:

2

An appellate court, in reviewing any criminal conviction, must determine whether the overall evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the accused was guilty of every element of the offense. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In reviewing a conviction in which the defendant offered evidence tending to establish the affirmative defense of justification, an appellate court must determine whether a rational trier of fact could have concluded by a preponderance of the evidence, viewed in the light most favorable to the prosecution, that defendant's failure to perform his affirmative duty did not result from physical incapacity to work. The evidence in the present case, viewed in the light most favorable to the prosecution, clearly preponderated in favor of a conclusion that defendant was physically incapacitated because of a back injury and was unable to work, and a rational trier of fact could not have reached a contrary conclusion on this evidence.

*Id*. at 911 (footnote omitted).

Thus, the *Cheatwood* opinion does not require reversal simply because the burden of proof was misapplied, but because the overall evidence did not support the conviction pursuant to a *Jackson* review. In *State v. Lejeune*, 487 So.2d 1243 (La.App. 3 Cir.), *affirmed in part*, *vacated on other grounds*, 489 So.2d 907 (La.1986), this court noted that at that time the issue of which party carried the burden of proof for self-defense in non-homicide cases was not settled. However, this court stated, "we need not resolve that issue because, *irrespective of who bears the burden*, the record before us shows that [the defendant] did not stab [the victim] in self-defense." *Id*. at 1246 (emphasis added). In *State v. Carter*, 96-337 (La.App. 1 Cir. 11/8/96), 684 So.2d 432, the majority addressed a second degree murder conviction and held the defendant bore the burden of proving intoxication. *See also State v. Rainey*, 98-436, (La.App. 5 Cir. 11/25/98), 722 So.2d 1097, *writ denied*, 98-3219 (La. 5/7/99), 741 So.2d 28; *State v. Garner*, 39,731 (La.App. 2 Cir. 9/8/05), 913 So.2d 874, *writ denied*, 05-2567 (La. 5/26/06), 930 So.2d 19. Taken as a whole, the jurisprudence shows that even when an improper burden of proof

3

may have been imposed on a defendant, the courts have been willing to uphold convictions.

In the present case, the State presented expert testimony to prove that Defendant was impaired at the time of the wreck. In turn, he presented expert testimony that questioned the validity of the State experts' conclusions – particularly those of Dr. Joseph Manno. Defendant's evidence was not in the nature of an affirmative defense, as it did not attempt to assert any justification or excuse for his actions. However, the evidence did not directly negate any element of the crime either. Rather, Defendant's expert witnesses testified in a manner intended to devalue Dr. Joseph Manno's analysis and opinion. The trial judge, as fact-finder, weighed the testimony of the experts and made a finding; clearly, this was within his authority. *See, e.g., State v. Brooks*, 92-3331 (La. 1/17/95), 648 So.2d 366; *State v. Boyd*, 359 So.2d 931 (La.1978).

Of course, the State still had to prove its case beyond a reasonable doubt, and, viewing the evidence in the light most favorable to the prosecution, it did so through the extensive expert testimony presented, as explained by the trial judge.

Regarding the feticide conviction, Defendant argues there was no proof that Angela Cohen was carrying a living, viable fetus at the time of the accident. Dr. Stephen Norman of the Rapides Parish Coroner's Office testified the injuries resulting from the accident caused Cohen's death and her unborn child's also.

These assignments of error have no merit.

## ASSIGNMENT OF ERROR NO. 2

In this assignment of error, Defendant argues the trial court erred by allowing Dr. Scott Kriger to testify regarding a laboratory analysis that he did not perform. Defendant acknowledges he did not initially object to the test reports, but notes that he did when he learned Dr. Kriger had not personally performed the tests.

4

His objection alleged a constitutional confrontation error pursuant to *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527 (2009). As Defendant had elected to proceed by bench trial, the judge deferred the issue to the merits. At trial, Defendant again objected to the admissibility of the lab results, but the court overruled the objection.

Defendant now argues the cases the trial judge relied upon in its ruling are distinguishable. He acknowledges a recent supreme court case, *State v. Simmons*, 11-1280 (La. 1/20/12), 78 So.3d 743, which held that a defendant waives his confrontation right regarding crime lab testing if he fails to request a subpoena pursuant to La. 15:501. However, he argues it is distinguishable. He notes that he objected to the evidence at the *Daubert* hearing in January 2010, but the State did not issue its notice of intent to use the lab results until March 2010.

The confrontation right does not apply to pretrial hearings, so Defendant's argument regarding the *Daubert* hearing lacks merit. *State v. Harris*, 08-2117 (La. 12/19/08), 998 So.2d 55, 56. Since the confrontation objection was plainly invalid when it was made, it did not preserve the issue for trial. As just mentioned, the State issued its notice of intent in March 2010, and Defendant had an opportunity at that time to subpoena the appropriate analyst pursuant to La.R.S. 15:501. The trial took place in October 2010. Under *Simmons*, he waived the right by failing to request a subpoena. Therefore, this assignment lacks merit.

## ASSIGNMENT OF ERROR NO. 3

In his third assignment of error, Defendant argues the trial court erred by allowing the testimony of Dr. Harry Plotnick, a defense witness at the *Daubert* hearing, to be admitted at trial. When the State moved to introduce the *Daubert* transcript as S-1 at trial, the Defendant objected, noting that Dr. Plotnick was not unavailable.

5

Although Defense counsel did not specifically argue that his constitutional confrontation rights were being violated, we will treat his argument as having preserved the issue. Part of his argument was that Plotnick's testimony was not adduced for purposes of trial. In the context of a confrontation analysis, pretrial testimony is not admissible if the witness at issue is not shown to be unavailable. *See, e.g., State v. Lewis*, 05-170 (La.App. 5 Cir. 11/29/05), 917 So.2d 583, *writ denied*, 06-757 (La. 12/15/06), 944 So.2d 1277.

However, even if error occurred, it may be harmless. As the supreme court has explained:

> Confrontation errors are subject to a *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) harmless error analysis. *See Delaware v. Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438; *State v. Hawkins*, 96-0766 (La.1/14/97), 688 So.2d 473, 478; *State v. Wille*, 559 So.2d 1321, 1332 (La.1990).
>
>> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.
>
> *Delaware v. Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438.

*State v. Robinson*, 01-273, pp. 9-10 (La. 5/17/02), 817 So.2d 1131, 1137.

In the present case, the test arguably does not apply, and as a practical matter would be difficult to apply, since Dr. Plotkin was Defendant's own witness. The expert's testimony, summarized above by the trial court, was at worst unhelpful to Defendant's case. Our reading of Dr. Plotkin's testimony does not reveal any

particular prejudice to the defense, and Defendant suggests none in his brief. For the reasons discussed, this assignment lack merit.

**ASSIGNMENT OF ERROR NO. 5**

In his final assignment of error, Defendant argues the trial court erred by denying his motion to reconsider his sentence. He has two complaints: first, that he should not have received the maximum sentence for third-degree feticide, and second, that the sentences should not be consecutive.

His overall argument raises the general issue of excessiveness of sentence. Generally a sentence meets constitutional standards if is not so disproportionate as to achieve no other goal than imposing pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has great discretion, and its determination of sentence will not be disturbed absent an abuse of that discretion. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Although Defendant in this case did express remorse at the sentencing hearing, we find his two prior DUI convictions were sufficient to justify the maximum sentence. Despite the earlier convictions, he again drove impaired; a young woman and her unborn child paid the price for his actions.

The deaths at issue in the present case were the result of a single act by Defendant; thus, La.Code Crim.P. art. 883 applies. La.Code Crim.P. art. 883 requires that the court specifically direct consecutive sentences. The second circuit has also required that the trial court provide particular justification from the record for imposing consecutive sentences. *State v. Johnson*, 42,323, (La.App. 2 Cir. 8/15/07), 962 So.2d 1126.

In the present case, the trial judge did direct consecutive sentences and give supporting reasons. Defendant's two prior DUI convictions provide sufficient

justification for imposing consecutive sentences.  It is worth noting that the trial court gave Defendant five years, the minimum, for the companion charge of vehicular homicide.  It is apparent the trial judge thought the taking of two lives called for a ten-year sentence.  Such reasoning did not exceed the sentencing court's discretion.

This assignment lacks merit.

## DECREE

For the foregoing reasons, Defendant's convictions and sentences are affirmed.

**CONVICTIONS AND SENTENCES AFFIRMED.**