SANDRA CABRINA JENKINS, Judge.
||M.J., a juvenile, appeals the delinquency adjudication for prostitution by solicitation, a violation of La. R.S. 14:82(A)(2). M.J. contends there is insufficient evidence to support this adjudication. M.J. submits that the State had the burden to prove that M.J. was not a victim of sex trafficking at the time of the alleged violation of La. R.S. 14:82 and failed to carry that burden of proof. M.J. also asserts that the juvenile court committed reversible error in denying the motion to recuse.
In light of the arguments presented by M.J., we consider the effect, if any, of recent legislation relative to juvenile vie- *1043 tims of sex trafficking on the prosecution of juveniles for the offense of prostitution. After our review of the record in light of the applicable law and the arguments presented, we affirm the adjudication of M.J. as a delinquent for a violation of La. R.S. 14:82. However, due to the juvenile court’s clear error in failing to hold a disposition hearing and in assessing an excessive fee, we vacate the disposition and remand this case for a disposition in accordance with the law.
| sF ACTUAL AND PROCEDURAL BACKGROUND
On November 6, 2013, the State filed a delinquency petition charging M.J. with one count of prostitution, a violation of La. R.S. 14:82. On December 2, 2013, M.J. appeared to answer the petition and entered a denial to the allegations. After M.J. entered a denial, the juvenile court ordered that M.J. be placed on strict house arrest under the supervision of the Electronic Monitoring Program (EMP).[1] The juvenile court then set the adjudication hearing for January 27, 2014. On January 22, the juvenile court granted a defense motion for continuance, and reset the adjudication hearing for February 3, 2014.
On January 23, 2014, the juvenile court held a status healing in this case.[2] On that date, the juvenile court remanded M.J. to th'e Youth Study Center pending the adjudication hearing set on February 3, 2014. On January 30, 2014, the defense filed a motion for immediate release of M.J. pending adjudication, or, in the alternative, seeking “any of the alternatives to detention that the Court may wish to impose.” As grounds for immediate release, the defense’s motion stated that the juvenile court remanded M.J. to the Youth Study Center without holding a continued custody hearing and without setting bail for M.J. See La. Ch. C. arts. 819, 820, 821, 823. On January 31, 2014, the juvenile court signed an order | ¡¡denying the motion for immediate release and the defense sought' supervisory review the same day. This court declined to exercise supervisory jurisdiction and denied the writ application.[3]
On February 3, 2014, the matter came before the juvenile court for adjudication. Prior to the commencement of the adjudication hearing, the defense filed a written motion for recusal of the judge and immediate reallotment of the case. At the commencement of the proceeding, the defense counsel raised the motion for recusal with the juvenile court. The juvenile court stated the motion had not been filed 72 hours prior to the trial date, in accordance with prior orders from the court,[4] and denied the motion for recusal. The defense then stated it was ready to argue its motion to quash the petition, filed on Janu *1044 ary 31, 2014. The juvenile court also denied the motion to quash without a hearing or arguments from counsel. The defense made an oral motion for continuance or a stay to seek writs on the juvenile court’s rulings and the defense further stated it was not prepared to proceed to adjudication. The juvenile court denied the motion for continuance or stay and immediately proceeded with the adjudication hearing.
At the adjudication hearing, the State presented the testimony of Sergeant Richard Welch of the New Orleans Police Department. Sgt. Welch testified that on October 30, 2013, he was working “in an overtime capacity undercover with [NOPD Eighth District] narcotics unit looking for prostitution-based crimes in the |4French Quarter.” Sgt. Welch was dressed in plain clothes for the assignment. At approximately 12:45a.m., Sgt. Welch was standing near the corner of Bourbon Street and St. Louis Street when he was approached by an individual, whom he identified in court as M.J. Sgt. Welch testified that M.J. asked if he “wanted to party” to which Sgt. Welch responded “of course.” Sgt. Welch asked M.J. what kind of partying they would be doing. M.J. told Sgt. Welch “touch me to make sure I know you’re not a cop.” In response, Sgt. Welch rubbed M.J.’s shoulder and thigh. Sgt. Welch stated, “at that point, he told me it would be $150 for his ass.” Sgt. Welch testified that he interpreted MJ.’s statement as a solicitation of anal sex. Sgt. Welch agreed to the offer; he then gave a signal to a NOPD “takedown team” that conducted the actual arrest of M.J.
On cross-examination, Sgt. Welch testified that there were no other witnesses to his conversation with M.J. Sgt. Welch stated that M.J. was dressed as a female, but he knew the individual was a male. Sgt. Welch acknowledged that M.J. did not make an explicit statement about having sexual intercourse with him, only the statement of “$150 for his ass.” Sgt. Welch was unaware that M.J. was a juvenile at the time of the arrest. He learned M.J. was a juvenile “about 20 minutes after” the arrest. Sgt. Welch did not conduct any further investigation of M.J. after the arrest and he was not aware of any such investigation being conducted by other officers. The arrest for prostitution was based solely on Sgt. Welch’s interaction with M.J.
[ ^Following Sgt. Welch’s testimony, the State rested its case, subject to rebuttal. The defense moved for a judgment of acquittal on the grounds that the State had not met the requisite burden of proof to adjudicate M.J. a delinquent for prostitution; the defense argued that the State had to prove M.J. was not a juvenile victim of sex trafficking at the time of the alleged commission of the offense.[5] The juvenile court heard arguments from both sides and denied the defense motion for judgment of acquittal. The defense objected to the court’s ruling on the motion, again requested a stay or continuance to seek supervisory review, and stated it was unprepared to present its case in chief at that time. The juvenile court denied a stay or continuance. The defense rested its case without presenting any testimony or evidence.
After closing arguments, the juvenile court adjudicated M.J. a delinquent for prostitution, a violation of La. R.S. 14:82. Immediately following the adjudication, the juvenile court imposed its disposition. The juvenile court imposed a six-month *1045 commitment to the Department of Public Safety and Corrections, suspended the commitment, and placed M.J. on one year of active probation with specific conditions. The juvenile court also assessed a $55 court processing fee payable to the Judicial Expense Fund.
This timely appeal followed.
|fiSTANDARD OF REVIEW
Although juvenile delinquency proceedings implicate aspects of criminal proceedings, juvenile proceedings are nonetheless civil in nature. State ex. rel. D.R., 10-0405, p. 5 (La.App. 4 Cir. 10/13/10), 50 So.3d 927, 930; In re C.B., 97-2783, p. 10 (La.3/4/98), 708 So.2d 391, 396-97. Due to the unique civil nature of juvenile proceedings, the scope of appellate review extends to both law and facts. La. Const, art. V § 10(B); State in the Interest of J.T., 11-1646, p. 5, 94 So.3d at 852. “Therefore, as in review of civil cases, a factual finding made by a trial court in a juvenile adjudication may not be disturbed by an appellate court unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong.” State ex. rel. C.N., 11-0074, p. 5 (La.App. 4 Cir. 6/29/11), 69 So.3d 711, 714 (citing State in the Interest of Batiste, 367 So.2d 784 (La.1979)). We, therefore, apply the clearly wrong/manifest error standard of review “to determine whether there is sufficient evidence of proof beyond a reasonable doubt to adjudicate a child a delinquent.” State ex rel. D.R., 10-0405, p. 8, 50 So.3d at 932; La. Ch. C. art. 883.
DISCUSSION
Assignments of Error No. 1 and No. 2
In the first assignment of error, M.J. contends there is insufficient evidence to sustain the delinquency adjudication for prostitution. M.J. argues that an act of prostitution by a juvenile does not constitute a delinquent act under La. Ch. C. art. 804(3) without proof that the juvenile was not a victim of sex trafficking at the 17time of the alleged act of prostitution. Relying on recent Louisiana legislation relative to human trafficking,[6] M.J. asserts that the State bears the burden to overcome a statutory presumption, pursuant to La. Ch. C. art. 725, that juveniles engaged in acts of prostitution are victims of sex trafficking and shall not be prosecuted for unlawful acts committed as a result of trafficking. M.J. argues that by failing to allege or introduce evidence establishing that M.J. was not a victim of sex trafficking, the State failed to carry its burden to prove that M.J. committed a delinquent act as defined by La. R.S. 804(3). M.J. further contends, in the related second assignment of error, that the juvenile court committed reversible error by finding the State did not have the burden of proving M.J. was not a victim of sex trafficking. By failing to apply that burden of proof on the State, M.J. argues the juvenile court clearly erred in finding there was sufficient evidence beyond a reasonable doubt to adjudicate M. J. delinquent for a violation of La. R.S. 14:82.
In order to adjudicate a juvenile delinquent, the State must prove beyond a reasonable doubt that the juvenile committed the delinquent act alleged in the petition. La. Ch. C. art. 883. The burden of proof in a juvenile delinquency proceeding is no less strenuous than the standard of proof in an adult criminal proceeding. See State in the Interest of J.T., 11-1646, p. 5 *1046 (La.App. 4 Cir. 5/16/12), 94 So.3d 847, 852; State ex. rel. C.B., 09-1114, p. 6 (La.App. 4 Cir. 12/16/09), 28 So.3d 525, 528. Where an adjudication is based on circumstantial |Revidence, such evidence “must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438; State ex. rel. C.B., 09-1114, p. 6, 28 So.3d at 528 (citing State v. Langford, 438 So.2d 979, 983 (La.1986)).
'When evaluating the sufficiency of the evidence to support a juvenile adjudication, this court has a constitutional duty to review the law and facts of the case. La. Const, art. V § 10(B). The Jackson v. Virginia[7] standard applied in all criminal proceedings requires “a bare review of facts through the prism of one of the parties, the prosecution,” to determine whether any rational trier of fact could be convinced beyond a reasonable doubt; whereas, Louisiana courts apply a broader standard in juvenile cases, which “looks to this particular trier of fact and whether his or her decision that there was proof beyond a reasonable doubt is not clearly wrong and is reasonable.” State ex rel. DR., 10-0405, pp. 13-14, 50 So.3d at 934-35. This scope of review remains highly deferential to the trier of fact and does not permit the appellate court to substitute its own factual and credibility determinations for those of the trier of fact. Id.; State in the Interest of C.D., 11-1701, p. 6 (La.7/2/12), 93 So.3d 1272, 1276. Applying this standard, we must determine whether the law and facts of the instant case support the factual findings and conclusions of the juvenile court that the evidence was sufficient to prove beyond a reasonable doubt that M. J. committed the delinquent act alleged in the petition.
|flIn the delinquency petition, the State alleged M.J. committed a delinquent act by violating La. R.S. 14:82, to wit, prostitution by solicitation. La. R.S. 14:82(A)(2) defines prostitution as “[t]he solicitation by one person of another with the intent to engage in indiscriminate sexual intercourse with the latter for compensation.” In order to convict a defendant of prostitution by solicitation, the State must prove (1) the defendant initiated an encounter with another person, (2) with the intent of engaging in sexual intercourse with that person for compensation. State v. Trump, 381 So.2d 452, 454 (La.1980). These are the only two elements necessary to prove a violation of the criminal statute La. R.S. 14:82. M.J. argues, however, that a violation of La. R.S. 14:82 by a juvenile does not constitute a “delinquent act,” under La. Ch. C. art. 804(3), without proof that the offending juvenile was not a victim of sex trafficking at the time of the alleged violation of La. R.S. 14:82; consequently, in order to prove beyond a reasonable doubt that M.J. committed the delinquent act alleged in the petition, the State must prove the two elements of La. R.S. 14:82 and that M.J. was not a victim of sex trafficking at the time of the commission of the offense.
The Children’s Code defines a delinquent act, in pertinent part, as follows:
“Delinquent act” means an act committed by a child of ten years of age or older which if committed by an adult is designated an offense under the statutes or ordinances of this state ... “Delinquent act” shall not include a violation of R.S. 14:82 ... for a child who, during the time of the alleged commission of the offense, was a victim of trafficking of *1047 children for sexual purposes pursuant to R.S. 14.46.3(E).
| inLa. Ch. C. art. 804(3); See La. Act No. 446, § 1 (2012); see also La. Act No. 429 § 3 (2013); La. Act No. 83 § 1 (2013).[8] M.J. asserts that this .definition of “delinquent act” was enacted in 2012 as part of a legislative act relative to human trafficking that provided certain legal presumptions and immunity provisions intended to prevent the prosecution of sexually exploited children and victims of trafficking. As a result of the entirety of the recent legislation, M.J. argues the legislature placed the burden of proof on the State to establish that a juvenile was not a victim of trafficking at the time of an alleged act of prostitution. By failing to meet this burden of proof, the State failed to prove beyond a reasonable doubt that M.J. committed a delinquent act as a matter of law.
During the adjudication proceedings, the defense raised this argument as a question of law on the necessary burden of proof in the instant case. Although defense counsel raised this issue four separate times during the adjudication proceedings,[9] the juvenile court did not allow briefs or a hearing on the issue and denied the motion to quash and motion for judgment of acquittal without reasons for judgment on the issue of the State’s burden of proof. However, in denying the third defense motion for continuance, the juvenile court noted and rejected M.J.’s argument, stating:
lnTHE COURT: You’ve had adequate time to be prepared to proceed accordingly. You’ve had more than adequate time. This is a misdemeanor case. This is you brought something about child trafficking. It was your due diligence to present evidence as to that and you have not. You haven’t brought a witness. You haven’t brought any documentation that he’s in some kind of witness protection that’s trying to protect him. So, you know, with that said, you need to present your defense for your client.
MR. MCENTYRE: And, Your Honor, it’s the defense’s position that it’s burden-shifting to make the defense prove that one of the allegations that the state has to prove is not true.
THE COURT: There was no allegation in the testimony presented by this police officer or any further investigation that showed that this juvenile was part of some trafficking, human trafficking in the French Quarter. Now, if you had that information instead of statement, you would have brought that in Court today or someone who is privy to actually showing that this child was involved in that. So Counsel — and that could have been part of your defense.
Thus, the juvenile court held that the State was not required to present evidence that M.J. was not a victim of sex trafficking in order to prove that M.J. committed a delinquent act of prostitution.
As a matter of law, we review de novo whether the juvenile court erred in finding that the State had no burden to prove M.J. was not a victim of sex trafficking at *1048 the time of the alleged commission of the act of prostitution. First, we look to Louisiana jurisprudence on the question of law regarding the burden of proof for a justification or affirmative defense in non-homicide cases. Finding no definitive resolution within the jurisprudence, we then consider as a matter of first impression whether the recent legislation cited by M.J. (1) creates a presumption that juveniles engaged in prostitution are victims of sex trafficking, (2) creates a burden of proof in a delinquency proceeding to establish that a juvenile, alleged to |12have committed an act of prostitution in violation of La. R.S. 14:82, was not a victim of sex trafficking, and (3) places that burden of proof on the State.
In State v. Cheatwood, 458 So.2d 907 (La.1984), the Louisiana Supreme Court opined that justification defenses based on “circumstances which make the accused’s conduct excusable on policy grounds” should be “treated as affirmative defenses which the accused must establish by a preponderance of evidence.” 458 So.2d at 910. “The statutory provisions setting forth the state’s burden of proof refer only to the requirement that the state prove the elements of the crime — not that the state disprove the exculpatory circumstances constituting defenses which defeat criminal culpability despite proof of the presence of all elements of the offense.” Id. at 910 n. 4. However, in State v. Fluker, 618 So.2d 459 (La.App. 4 Cir.1993), this Court opposed the reasoning in Cheatwood, stating:
[T]he statutes which provide for exculpatory circumstances, like justification, do not provide any indication that the defendant bears the burden of proving that his act falls under one of those provisions. La. R.S. 14:18, 14:19, and 14:20. We see no distinction between these provisions, and fail to see why the State would have the burden of disproving in one situation (homicide), and why the defendant would bear the burden of proving in another (nonhomicide). Absent a clear direction from our legislature, we feel that the defendant should not have the burden of proving anything. ... Under our Louisiana Constitution, every defendant is innocent until proven guilty. La. Const. Article I § 16 (1974). The State bears the burden of proving guilt beyond a reasonable doubt. Id. Except where expressly stated by the legislature, the State should bear the burden of proving every aspect of the defendant’s guilt. Where an issue of exculpatory circumstances exists, it should be the State’s burden to disprove such a claim of innocence.
Fluker, 618 So.2d at 463. Since the Fluker decision, however, this Court, along with other Louisiana appellate courts, have noted a conflict in the jurisprudence 113and expressed an unresolved position on the issue. See State v. Jones, 12-0510, p. 11 (La.App. 4 Cir. 6/12/13), 119 So.3d 859, 866 (reviewing jurisprudence from this Court on the burden of proof for a justification defense in non-homicide cases); State v. Cooks, 11-0342, pp. 11-12 (La.App. 4 Cir. 12/14/11), 81 So.3d 932, 939-40; State v. Jefferson, 04-1960 (La.App. 4 Cir. 12/21/05), 922 So.2d 577; State v. Wischer, 04-0325 (La.App. 4 cir. 9/22/04), 885 So.2d 602; see also State v. Clowney, unpub., 09-1503 (La.App. 4 Cir. 5/12/10), 2010 WL 8972137; but see, State v. Heider, 2012-52 (La.App. 3 Cir. 10/3/12), 101 So.3d 1025 (finding the issue of the burden of proof for justification defenses is unresolved; however, “even when an improper burden of proof may have been applied on a defendant, the courts have been willing to uphold convictions.”); State v. Rainey, 98-436 (La.App. 5 Cir. 11/25/98), 722 So.2d 1097 (holding that the Fifth Circuit finds the burden of production and persuasion for justification defenses lies with the de *1049 fendant). Consequently, Louisiana jurisprudence is unsettled on the issue of who bears the burden of proof for justification or affirmative defenses in non-homicide cases as it has not been definitely addressed by the Louisiana Supreme Court.
Although the issue of law remains unsettled, Louisiana courts have found it unnecessary to resolve the issue where “under the particular facts of each case the evidence was sufficient to negate the defendant’s claim” of justification. Cooks, 11-0342, p. 12, 81 So.3d at 939-40 (citations omitted); see Jones, 12-0510, p. 11, 119 So.3d at 866. In this case, however, neither the State nor the defense presented 114evidence to refute or support the affirmative defense that M.J. was a victim of sex trafficking at the time of the alleged act of prostitution. The record supports a finding by the juvenile court that M.J. committed an act of prostitution; but the evidence and testimony neither establish or negate the claim that M.J. was a victim of sex trafficking at the time of the act.
The State presented the testimony of Sgt. Welch, which established the two essential elements of the offense of prostitution by solicitation: (1) M.J. initiated contact with Sgt. Welch (2) with the intent to offer and engage in sexual intercourse in exchange for compensation. Sgt. Welch stated that he learned M.J. was a juvenile about 20 minutes after the arrest; he was not aware of any further investigation of M.J. upon learning that M.J. was a.juvenile. During the presentation of Sgt. Welch’s testimony, no reference was made to sex trafficking and no evidence was offered to establish that M.J. was not a victim of sex trafficking. However, Sgt. Welch’s testimony supports a finding that M.J. committed the elements of the offense of prostitution as defined by the criminal statute, La. R.S. 14:82(A)(2).
In defense, M.J. presented no evidence or testimony as pari of its case in chief. Instead, M.J. argued that the recent legislation relative to human trafficking supports the defense’s position that the State failed to satisfy its burden of proof in this case. M.J. maintained that since the State did not present any evidence to | ^establish that M.J. was not a victim of sex trafficking, the State failed to prove M.J. committed a delinquent act punishable under Louisiana law.[10]
Under the particular facts of this case, the evidence and testimony do not establish or negate the claim that M.J. was a victim of sex trafficking at the time of the act. Consequently, we turn to examine the recent legislation cited by M.J. and consider the possible impact on this delinquency proceeding. Applying principles of statutory interpretation, we must determine whether the Legislature created a presumption and burden of proof applicable to delinquency proceedings for a violation of La. R.S. 14:82; and, more specifically, whether the legislation places a burden of proof on the State in this case. There must be a clear legislative intent in order to conclude that the juvenile court erred in finding the State did not have a burden to prpve that M.J. was not a victim of sex trafficking at the time of the alleged violation of La. R.S. 14:82.
“The method for judicially interpreting statutory law, and determining whether it applies to a specific set of facts, is well-settled in our jurisprudence. The *1050 essential question in all cases of statutory-interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the legislature to enact the law.” Caldwell v. Janssen Pharmaceutical, Inc., 12-2447, p. 10 (La.1/28/14), 144 So.3d 898, 907 (citations omitted). Statutory interpretation necessarily begins with the plain language of the statute itself. State v. Oliphant, 12-1176, p. 5 (La.3/19/13), 113 So.3d 165, 168 (citing Oubre v. Louisiana Citizens Fair Plan, 11-0097, p. 11 (La.12/16/11), 79 So.3d 987, 997). “When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used.” Id. (citing La. C.C. art. 9; La. R.S. § 1:4; In re Clegg, 10-0323, p. 20 (La.7/6/10), 41 So.3d 1141, 1154). The legislative intent of the law is then “determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law.” Caldwell, 12-2447, p. 11, 144 So.3d at 907.
First we consider two pertinent statutory provisions enacted by the Louisiana Legislature in 2012 by. La. Act No. 446 § 1, relative to human trafficking, trafficking of children for sexual purposes, and the commercial sexual exploitation of children. The Legislature amended La. Ch. C. art. 804(3) to exclude from the definition of “delinquent act” a violation of La. R.S. 14:82 by a juvenile who was a victim of sex trafficking at the time of the alleged commission of the offense. Within the same Act, the Legislature also enacted La. R.S. 14:82(G), which provides an affirmative defense to prosecution for the offense of prostitution based on the same reasoning- — -“the defendant was a victim of trafficking of children for sexual purposes as provided in La. R.S. 14:46.3(E).” The provision of La. R.S. 14:46.3(E), enacted in 2009, states that, “[n]o victim of trafficking as defined by |17the provisions of this Section shall be prosecuted for unlawful acts as a direct result of being trafficked.”[11] Read together, these statutes indicate a legislative intent to provide immunity from prosecution for the violation of certain criminal statutes, specifically including La. R.S. 14:82, by a juvenile who was a victim of sex trafficking at the time of the alleged offense. However, the plain language of these statutory provisions does not preclude completely the State’s prosecution of a juvenile for a violation of La. R.S. 14:82. The applicability of the affirmative defense and immunity provisions is contingent upon the juvenile being deemed a victim of sex trafficking at the time of the alleged violation. These statutory provisions do not specifically state how a juvenile is determined to be a victim of sex trafficking.
In 2013, the Louisiana Legislature passed La. Acts No. 429 § 3.[12] Here again, the Legislature enacted several statutes and provisions “relative to human trafficking; to provide for certain presumptions concerning children that are victims of child sex trafficking; ... to provide a safe harbor program for sexually exploited children; to provide for a statewide protocol; ... and to provide for other related matters.” Among these provisions, the Legislature enacted Chapter 20 of Title VI of *1051 the Children’s Code,[13] comprised of La. Ch. C. arts. 725 to 725.3,118entitled “Safe Harbor for Sexually Exploited Children.” La. Ch.C. art. 725 states the “findings and purposes” of the Chapter and, in its entirety, reads:
The legislature finds that arresting, prosecuting, and incarcerating victimized children serves to re-traumatize them and to increase their feelings of low self-esteem, which' only makes the process of recovery more difficult. Both federal and international, law recognize that sexually exploited children are the victims of crime and should be treated as such. Therefore, sexually exploited children should not be prosecuted for criminal acts related to prostitution. Instead, sexually exploited children should, where possible, be diverted into services that address the needs of these children outside of the justice system. Sexually exploited children deserve the protection of child welfare services, including diversion, crisis intervention, counseling, and emergency housing services. The purpose of this Chapter is to protect a child, from further victimization after the child is discovered to be a sexually exploited child by ensuring that a child protective response is in place in the state. This is to be accomplished by presuming that any child engaged in prostitution, prostitution by massage, or crime against nature by solicitation is a victim of sex trafficking and providing these children with the appropriate care and services where possible. In determining the need for and capacity of services that may be provided, the Department of . Children and Family Services shall recognize that sexually exploited children have separate and distinct service needs according to gender, and every effort should be made to ensure these children are not prosecuted or treated as juvenile delinquents, but instead are given the appropriate social services, (emphasis added)
M.J. asserts that, pursuant to La. Ch. C. art. 725, Louisiana law itself deems any juvenile engaged in an act of prostitution a victim of trafficking; .therefore, the State has the burden to overcome this statutory presumption and the juvenile has no obligation to present evidence establishing him or herself as a victim of sex trafficking. In opposition, the State points out that La. Ch. C. art. 725 was enacted within Title VI of the Children’s Code, which governs Child In Need of Care cases, rather than within Title VIII governing Delinquency proceedings. Thus the State asserts that La. Ch. C. art. 725 has no applicability or prescriptive effect on delinquency proceedings. The State further argues that the entirety of the j ^legislative act, La. Acts No. 429, enacted only one provision relevant to the conduct of delinquency proceedings; and that provision, La. Ch. C. art. 889(D),[14] permits the State to effect an informal adjustment agreement with a juvenile alleged to have committed a violation of La. R.S. 14:82 or proceed to prosecute the juvenile as a delinquent. The State maintains that nothing in the Act as a whole created or intended a legal presumption precluding the *1052 State’s authority to prosecute a juvenile delinquent for a violation of La. R.S. 14:82.
Upon review of the language of the statutes and provisions enacted within both La. Acts No. 446 (2012) and La. Acts No. 429 (2013), we find the statutory language indicates clear legislative goals of protecting juvenile victims of sex trafficking from further exploitation and providing those victims appropriate social services. Notably, the Legislature stated in its findings that “arresting, prosecuting, and incarcerating victimized children serves to re-traumatize them,” that “sexually exploited children should not be prosecuted for criminal acts related to prostitution,” but rather “deserve the protection of child welfare services, including diversion, crisis intervention, counseling, and emergency housing services,” and “this is to be accomplished by presuming that any child engaged in prostitution ... is a victim of sex trafficking.” La. Ch. C. art. 725. The two legislative acts also reveal the legislative intent to preclude prosecution of victims of trafficking for acts committed as a result of that exploitation. La. R.S. 14:63.3; La. Ch. C. art. 804(3).
| gpHowever, we find no provisions within the enacted legislation requiring the State, through the district attorney’s office, to determine whether a juvenile who committed a violation of La. R.S. 14:82 was not a victim of sex trafficking; nor do we find any statutory language explicitly prohibiting the State from prosecuting a juvenile delinquent for that violation. In fact, most of the legislation does not implicate the course and conduct of delinquency proceedings. Several provisions fall under the Child In Need of Care statutes of the Children’s Code. The statutory presumption created within La. Ch. C. art. 725 directs the Department of Children and Family Services (“DCFS”) to take steps to ensure that sexually exploited children are not treated as delinquents, by presuming that juveniles engaged in acts of prostitution are victims of sex trafficking; however, the legislation does not mandate law enforcement or the district attorney’s office to presume that any juvenile engaged in an act of prostitution is a victim of sex trafficking who must be diverted to services through the DCFS in lieu of arrest and prosecution.[15] 121 Moreover, nothing in *1053 the entirety of the relevant legislation clearly states that the State is precluded from prosecuting a juvenile delinquent for a violation' of La. R.S. 14:82 absent an allegation and proof that the juvenile was not a victim of sex trafficking at the time of the alleged offense.
Under the current statutory scheme, neither law enforcement nor the district attorney’s office are required to determine whether a juvenile arrested and charged with a violation of La. R.S. 14:82 was a victim of sex trafficking at the time of the alleged offense. Furthermore, there is no statutory burden of proof on the State to establish that a juvenile was not a victim of sex trafficking in order to prove that a juvenile committed a delinquent act by violating La. R.S. 14:82. If, however, there is evidence introduced during the delinquency proceeding tending to prove by a preponderance of the evidence[16] that the juvenile was a victim of sex trafficking at the time of the alleged act of prostitution, then a violation of La. R.S. 14:82 by that juvenile would not constitute a delinquent act pursuant to La. Ch. C. art. 804(8); a | ¡^juvenile shall not be prosecuted or adjudicated delinquent for an unlawful act committed as a direct result of being trafficked pursuant to La. R.S. 14:46.3. See also La. R.S. 14:82(G).
Based on the foregoing, we find that the juvenile court did not err by finding that the State had no burden to prove that M.J. was not a victim of sex trafficking in order to prove a delinquent act in violation of La. R.S. 14:82. Thus, given the facts of this case and the applicable law, we find sufficient evidence to prove beyond a reasonable doubt that M.J. committed' an act of prostitution in violation of La. R.S. 14:82; and there was no evidence introduced to establish M.J.’s claim of an affirmative defense pursuant to La. R.S. 14:82(G). Therefore, M.J,’s first and second assignments of error are without merit.
Assignment of Error No. 3
'In the third assignment of error, M.J. argues that the juvenile court committed reversible error in denying the defense motion to recuse the judge and in not referring the motion to another judge for hearing. M.J. contends that the motion to recuse the juvenile court judge set forth sufficient factual allegations demonstrating the judge’s bias or prejudice toward M.J. *1054 to such an extent that the judge was unable to conduct a fair and impartial adjudication.
Where a party believes there are sufficient grounds for recusation of the trial judge, the party shall file a written motion setting forth the factual allegations in support of recusation. La.C.Cr.P. art. 674. “The motion shall be filed prior to the commencement of the trial unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after the facts are discovered, but prior to verdict or judgment.” Id. If the motion sets | ^forth factual allegations supporting a valid ground for recusation, then the judge shall either recuse herself, or refer the motion for hearing to another judge. Id.
The defense filed the motion to recuse the juvenile judge on the morning of February 3, 2014, prior to the commencement of the adjudication hearing. At the commencement of the hearing, defense counsel raised the motion and the juvenile court stated: “This is not on our docket. It’s filed today. At this time, the Court is denying it.” The defense stated that the motion was filed in accordance with proper procedure, La.C.Cr.P. art. 674, but the juvenile court maintained that it was not filed according to the posted rules of the court requiring all motions and pleadings to be filed 72 hours prior to the adjudication hearing.[17] The juvenile court judge denied the motion to recuse as untimely and not properly before the court. The record indicates, however, that the motion to recuse was filed in accordance with La.C.Cr.P. art. 674, prior to the commencement of the adjudication hearing, as reflected by the time-stamp on the motion. Therefore, the motion was filed in accordance with the law.
Pursuant to La.C.Cr.P. art. 674, we find the juvenile court clearly erred by summarily denying the timely motion without first reviewing the allegations and determining whether there were valid grounds for the motion to recuse.[18] See State v. Bennett, 341 So.2d 847, 858 (La.1976) (“[T]he judge to whom the motion relates must answer the threshold question of whether the motion states valid grounds.”). But the juvenile court’s error in denying the motion as untimely is not necessarily grounds for reversal; the ruling shall not be reversed unless the error disaffected the substantial rights of the accused. La.C.Cr.P. art. 921; see State v. Williams, 00-0011, pp. 13-14 (La.App. 4 Cir. 5/9/01), 788 So.2d 515, 527 (finding that the failure to recuse constitutes the denial of the statutory right provided by La.C.Cr.P. art. 671, which does not mandate reversal unless the violation affects the substantial rights of the accused.) Therefore, we review the motion to recuse to determine if it sets forth factual allegations stating a valid ground requiring recu-sal or referral of the motion for a hearing by another judge. See State v. Williams, 601 So.2d 1374, 1375 (La.1992)(per cu-riam ).
A judge shall be recused when the judge “[i]s biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;” or “[w]ould be unable, for any other reason, to conduct a *1055 fair and impartial trial,” La.C.Cr.P. art. 671(A)(1), (6). In evaluating the grounds for recusal, it is well-settled that the trial judge is presumed to be impartial. State v. Edwards, 420 So.2d 663, 673 (La.1982). The party desiring to recuse the trial judge’ must set forth factual allegations in support of the motion to rebut the presumption of impartiality. State v. Walton, 469 So.2d 1204, 1205 (La.App. 4 Cir.1985). Improper remarks or the appearance of impropriety during the proceedings are not cause for recusal unless supported by evidence in the record of actual bias. In re Succession of Manheim, 03-0282, p. 8 (La.App. 4 Cir. 10/15/03), 859 So.2d 836, 840; State v. Doleman, 02-0957, p. 7 (La.App. 4 Cir. 12/4/02), 835 So.2d 850, 857; State v. Collins, 288 So.2d 602, 604-05. In order to justify recusal on the grounds of bias, prejudice, or impartiality on the part of the judge, the claim must be of a substantial nature and based on more than conclusory ^allegations. Doleman, 02-0957, p. 8, 835 So.2d at 857; State v. Parker, 96-1852, p. 15 (La.App. 4 Cir. 6/18/97), 696 So.2d 599, 607.
In this case, the defense’s motion to recuse is based on the grounds that the juvenile court judge demonstrated bias or prejudice toward M.J. to such an extent that the judge was unable to conduct a fair and impartial trial. La.C.Cr.P. art. 671(A)(1). Thus, the threshold question is whether there are factual allegations stated within the motion that are based on more than mere conclusory statements of bias or prejudice that warrant recusal or merit a contradictory hearing and review by another judge. Doleman, 02-0957, pp. 8-9, 835 So.2d at 857; State v. Collins, 288 So.2d 602, 604 (La.1974).
The first complaint refers to a colloquy between the defense counsel and the juvenile judge during the appearance to answer, on December 2, 2013. At the opening of the proceeding, defense counsel stated his appearance on the record as counsel and referred to M.J. using a female name rather than the male name stated in the petition.[19] The juvenile judge stated to defense counsel, “Mr. Jordan, you need to correct the name. The name is [M.J.] and that is how he will be recognized by this court and by the State of Louisiana pursuant to his birth cértifí-cate.” Defense counsel explained to the juvenile judge that M.J. identifies as a female and uses a female name rather than the male name stated in the petition. The juvenile judge stated that the court doés not use preferred names and would use the name stated on M.J.’s 'birth certificate and in the petition.[20] The motion to recuse cites 12fithe juvenile judge’s comment and decision not to respect M.J.’s preferred name as evidence of the juvenile judge’s bias and prejudice toward M.J.
We find this allegation of bias or prejudice to be subjective and conclusory. Although the juvenile judge’s refusal to acknowledge MJ.’s gender identity might be inconsiderate, the judge made no statements during that proceeding that would support a finding of actual bias or prejudice toward M.J. See Doleman, 02-0957, p. 10, 835 So.2d at 858; State v. Taylor, 07-93, p. 11 (La.App. 5 Cir. 11/27/07), 973 So.2d 83, 91-92, writ denied, 07-2454 (La.5/9/08), 980 So.2d 688. Rather, the juvenile court stated a neutral, objective *1056 reason for denying the request and for using M.J.’s legal name during the proceedings.
In another allegation, defense counsel states that the juvenile court “made a number of off-color jokes involving transgender females in open court” on January 31, 2014. Defense counsel claims that this occurred prior to the juvenile court denying the defense motion for immediate release of M.J. from the Youth Study Center. However, the record before this Court does not indicate that any court proceedings for this case were conducted on January 31, 2014;[21] the record contains an order, signed on that date, denying the defense’s motion for immediate release of M.J. Furthermore, the motion does not provide any further detail or explanation of the statements allegedly made by the juvenile court. Based on our review of the record, we find no factual support for this allegation.[22] Without any | ^factual support for this allegation, we dismiss it as unfounded. See In re Manheim, 03-0282, p. 8, n. 4, 859 So.2d at 840; Collins, 288 So.2d at 605.
A third allegation within the motion complains of the pre-adjudication restrictions on release imposed upon M.J. by the juvenile court. Specifically, defense counsel alleges that the juvenile court did not hear any testimony or establish a factual basis before ordering strict house arrest under the electronic monitoring program. The record of the proceedings reveals that the State recited allegations from the petition that M.J. was arrested at 12:45 a.m. which was a curfew violation. The juvenile court also stated that the restrictions were imposed based on M.J.’s history. The juvenile court later stated that it would consider modifying the terms of the order to allow M.J. to participate in extracurricular school activities upon receiving documentation verifying M.J.’s participation. We note that when defense counsel complained that the court had not explained the basis for the electronic monitoring, the juvenile court stated “based on nothing, based on the fact that I’ve ordered it.” Although the judge’s statement to defense counsel may be impertinent, the statement does not establish actual bias or prejudice toward M.J. Under La. Ch. C. art. 817(A), the juvenile court was within its discretion to impose certain reasonable restrictions upon M.J.’s release.
The final allegation in support of recusal complains of the juvenile judge’s pre-adjudication order remanding M.J. to the Youth Study Center. According to this allegation, the juvenile court held an add-on status hearing on January 23, 2014 and relied upon information outside of the record of this case in determining that M.J. should be remanded pending the adjudication hearing on February 3, 2014. At the hearing, the juvenile court stated that the add-on status hearing had been set “based on a previous hearing held in Judge Lagarde’s Section that was | ^dismissed by the court at that time, so therefore this matter has been brought *1057 today in this court.” The juvenile court stated it had received and reviewed an instanter order issued by Judge Lagarde in Section D and an affidavit of support relating to an incident that occurred at M.J.’s mother’s house involving M.J. and the mother’s boyfriend.[23] The juvenile court asked defense counsel if he had discussed with M.J. the options offered by the court in chambers and determined what M.J. wanted to do. Defense counsel stated that M.J. did not want to go to the Youth Study Center but would defer to the orders of the juvenile court. The juvenile court then provided several reasons on the record for determining that M.J. should be placed at the Youth Study Center pending adjudication. The juvenile court stated it was very concerned about the “volatile situation” at M.J.’s mother’s house and that due to the “exigent circumstances” involved, the court had determined that it was in the best interest of M.J. to be placed at the Youth Study Center rather than return to his mother’s house. Defense counsel requested that the juvenile court explore other less restrictive options because M.J. had not violated any terms of his release. The juvenile court responded that M.J. had violated the terms of his release by not attending school, and stated the allegations of an altercation at M.J.’s mother’s house also support the court’s finding that M.J. violated the terms of release. The juvenile court reiterated several times that placing M.J. at the Youth Study Center was the court’s best option to protect M.J. at that time. Based on the reasoning provided by the juvenile court and from our review of the record of that hearing, we find no factual support for the allegation that the juvenile | ^judge’s order to remand M.J. pending adjudication was motivated by actual bias or prejudice toward M.J.[24]
From our review of the motion and the record of the proceedings, we find the allegations contained within the motion to recuse represent conclusory impressions of the judge’s conduct during the course of the delinquency proceedings. The asserted grounds for recusal based on bias or prejudice toward M.J. are not supported by the record. Thus, we cannot say that the juvenile court’s error in summarily denying the motion affected or prejudiced the substantial rights of M. J. such that the error constitutes grounds for reversal. This assignment of error is without merit.
Assignment of Error No. 4
In his fourth and final assignment of error, M.J. argues the juvenile court erred in failing to conduct the required disposition hearing and in assessing an excessive *1058 fee. We find merit in this assignment of error and, accordingly, vacate the disposition.
“Prior to entering a judgment of disposition, the court shall conduct a disposition hearing.” La. Ch. C. art. 892. Although the hearing may be conducted immediately following the adjudication, “unless the child waives the presentation, the court shall hear evidence as to whether the child is in need of treatment or | ^rehabilitation and shall make and file its findings.” La. Ch. C. art. 893. The juvenile court shall receive all evidence offered by the juvenile or the state that will be helpful in determining the proper disposition; and the parties shall be afforded an opportunity to present evidence and witnesses. La. Ch. C. art. 893. “The jurisprudence disallows a summary disposition without a hearing and requires some evidence of need of treatment or rehabilitation.” State in the Interest of T.E., 11-1172, p. 2 (La.App. 4 Cir. 9/19/12), 100 So.3d 963, 964-65.
The record reflects that the juvenile court did not hold a disposition hearing. The transcript reveals that the juvenile court proceeded to impose its disposition immediately following the adjudication of M.J. as a delinquent. There is no indication in the record that M.J. waived the disposition hearing or presentation of evidence. Without the required hearing and without taking any evidence or argument, the juvenile court imposed the maximum sentence of six months commitment to the Department of Public Safety and Corrections, suspended that sentence, placed M.J. on active probation for one year, imposed strict curfew restrictions and other conditions, and assessed a $55 court processing fee. There is also no indication in the record that the juvenile court took into consideration the disposition guidelines set forth in La. Ch. C. art. 901.[25] Thus, the juvenile court did not consider any facts or evidence as to whether M.J. was in need of treatment, rehabilitation, or protective services and, consequently, foreclosed any possibility of a deferred dispositional agreement or the provision of specialized services for |aiM.J.[26] Finally, the juvenile court did not articulate any findings or reasons for this disposition.
The juvenile court clearly erred in failing to hold a disposition hearing as mandated by La. Ch. C. art. 892. Furthermore, the juvenile court erred in assessing a $55 court fee, in excess of the amount authorized by La. R.S. 13:1595.2. The statute providing for the judicial expense fund for the Orleans Parish Juvenile Court authorizes the juvenile court to assess a $50 court fee against every juvenile who is adjudicated delinquent; La. R.S. 13:1595.2(A). In consideration of the juvenile court’s error in failing to hold a disposition hearing and in assessing a fee in excess of the statutory amount, we vacate *1059 the disposition and remand this matter for a disposition in accordance with law.
CONCLUSION
. For the foregoing reasons, we affirm the adjudication of M.J. as a delinquent, but we vacate the disposition and remand this matter to the juvenile court for a disposition hearing and assessment of fees in accordance with law.
ADJUDICATION AFFIRMED; DISPOSITION VACATED; REMANDED.
BELSOME, J., dissents with reasons.

. Defense counsel objected to this condition of release without a hearing. On December 19, 2013, the defense filed a motion for removal or modification of the electronic monitoring, citing MJ.’s participation in after-school, extracurricular activities and attaching a letter from M.J.’s school counselor. The juvenile co’urt set the motion for hearing on January 27, 2014. There is no indication in the record that this motion was heard prior to the adjudication, at which point the motion became moot.

. Pursuant to an order from this Court to supplement the record with transcripts of all proceedings in this case, the Orleans Parish Juvenile Court submitted video recordings, in lieu of transcripts, of all proceedings, including the add-on status hearing held on January 23, 2014.

. State in the Interest of M.J., unpub., 2014-0138 (La.App. 4 Cir. 1/31/14).

. The juvenile court’s December 2, 2013, judgment includes an order setting pre-trial motion deadlines. The order states that any motions filed beyond the deadlines set forth will not be considered by the court.

. The defense also argued that juveniles do not have the legal capacity to consent to sex under Louisiana law; thus, the State had to affirmatively prove that M.J. had the mens rea to commit the offense of prostitution.

. See generally, La. Act No. 446 § 6 (2012), Human Trafficking, Trafficking of Children for Sexual Purposes, and the Commercial Sexual Exploitation of Children; La. Act No. 429 § 3 (2013), Human Trafficking; La. Act No. 83 § 1(2013), Certain Offenses Concerning Prostitution.

. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.")

. By these .Acts, the Louisiana Legislature enacted and amended statutes to provide certain protections for sexually exploited children, including a presumption relative to juveniles engaged in acts of prostitution, an affirmative defense for child victims of sex trafficking, immunity from juvenile adjudication for the offense of prostitution, and alternatives to adjudication for offenses committed as a result of trafficking. See La. Ch. C. art. 725; La. R.S. 14:82(G); La. R.S. 14:46.3(E); La. Ch. C. art. 839.

. The issue of the burden of proof was raised by the defense (1) in the motion to quash, filed on January 31, 2014 and denied by the juvenile court without a hearing, (2) in opening statements, (3) in arguing for a judgment of acquittal, and (4) in closing arguments.

. We note at the outset that this question of law was first raised in the juvenile court within the defense's motion to quash, which the juvenile court denied without a hearing and without reasons. The juvenile court erred by failing to hold a heating on the merits of the motion. See La.C.Cr.P. art. 537: State v. Marcelin, 13-0893, pp. 3-4 (La.App. 4 Cir. 12/18/13), 131 So.3d 427, 430.

. La. R.S. 14.46.3(E) was amended in 2014 by La. Acts, No. 564 § 1, with the additional language: "Any child determined to be ,a victim pursuant to the provisions of this Subsection shall be eligible for specialized services for sexually exploited children."

. Effective June 24, 2013.

. Title VI comprises the Child In Need of Care statutes of the Children’s Code; Title VIII comprises the Delinquency statutes.

. La. Ch. C. art. 839(D)(1) provides in pertinent part, "[w]here a petition involves an allegation of an act of prostitution pursuant to R.S. 14:82 ... and it is the child's first offense and the child expresses a willingness to cooperate and receive specialized services for sexually exploited children, the district attorney may effect an informal adjustment agreement” in lieu of continuing with delinquency proceedings.

. La. Ch. C. art. 725 does not create a cognizable legal presumption or establish a burden of proof on the State in delinquency proceedings. La. Ch. C. art. 725 directs the Department of Children and Family Services ("DCFS”) to take steps to "ensure [sexually exploited] children are not prosecuted or treated as juvenile delinquents, but instead are given the appropriate social services.” But La. Ch.C. art. 725 neither requires or proscribes DCFS or any other agency to follow certain procedures regarding juveniles who are alleged to have committed acts of prostitution. The statute includes no directive to law enforcement, the district attorney’s office, or the juvenile court regarding the identification of juvenile victims of sex trafficking or the arrest and prosecution of juveniles engaged in acts of prostitution.
Furthermore, La. Ch.C. art. 839(D) acknowledges the State’s authority to effect an informal adjustment agreement or proceed with a delinquency proceeding. The statute permits but does not require the State to suspend delinquency proceedings in favor of an informal adjustment agreement, in cases involving an allegation of an act of prostitution by a juvenile.
We note, however, the enactment of La. R.S. 46:2162 by La. Acts No. 429 (2013), which sets forth a procedure for the "[classification of victims of human trafficking,” to be implemented by law enforcement, the district attorney's office, and the office of the attorney general. In pertinent part, the statute reads:
A. As soon as practicable after the initial encounter with a person who reasonably appears to a law enforcement agency, a district attorney's office, or the office of the attorney general to be a victim of human trafficking, such agency or office shall:
(1) Notify the Crime Victims Services Bureau of the Department of Public Safety and *1053 Corrections that such person may be eligible for services under this Chapter.
(2) Make a preliminary assessment of whether such victim or possible victim of human trafficking appears to meet the criteria for certification as a victim of a severe form of trafficking ... or appears to be eligible for any federal, state, or local benefits and services.
(a) If it is determined that the victim or possible victim appears to meet such criteria, then the agency or office shall report the finding to the victim and shall refer the child victim to appropriate services available, including legal services providers.
(b) If the victim or possible victim is under the age of eighteen ... the agency or office shall also notify the appropriate protective service agency.
This statute does not specifically require a law enforcement agency or the district attorney’s office to implement this protocol whenever a juvenile is arrested and charged with an act of prostitution; however, read in pari materia with the statutes previously discussed, particularly La. Ch. C. art. 804(3) and La. R.S. 14:46.3, the implementation of this protocol would serve the express goals and intent of the entire legislation relative to trafficking by identifying juvenile victims and diverting them from delinquency proceedings into child in need of care services. By contrast, arresting and adjudicating juveniles for prostitution, without any consideration of whether the juveniles are possible victims of sex trafficking or sexual exploitation, does not serve to advance the express legislative goal of protecting juveniles from further exploitation.

. See Cheatwood, 458 So.2d at 910; see also, State v. Roy, 395 So.2d 664 (La.1981).

. The Court Procedures for Orleans Parish Juvenile Court that are promulgated within Appendix 41.0 (Rule 41.0) of the Rules of Louisiana District Court Rules do not include any rule regarding time for filing motions.

. According to the transcript of the proceedings, the juvenile court denied the motion to recuse as untimely and refused to look at a copy of the motion because the original was still in the Clerk's office.

. The defense counsel stated a female name with the initials M.J.

. Defense counsel also alleges that the juvenile judge then denied a request from M.J. to speak with the judge in chambers about this matter; however, the recording of the proceeding does not reveal any statement or request from M.J. or defense counsel for a conference in chambers.

. Pursuant to an order from this Court to supplement the record with recordings of proceedings from certain dates, including January 31, 2014, the record includes video recordings of all court proceedings held in Section E on that date.

. We also note that the juvenile judge denied this specific allegation. The juvenile judge denied the motion to recuse, as untimely, on February 3, 2014 in open court. However, the juvenile judge subsequently signed an order on February 4, 2014, denying the motion to recuse, noting it was "moot." On the motion to recuse, the judge made a note that the allegation regarding off-color jokes involving transgender persons was "untrue” and she signed her initials.

. The record on appeal does not include a copy of the instanter order or affidavit in support, or any documentation from the case dismissed in Judge Lagarde’s section of Orleans Parish Juvenile Court.

. We note that the juvenile court did not conduct a continued custody hearing, pursuant to La. Ch.C. art. 820 and 821, at which the State is required to prove probable cause that the juvenile committed a delinquent act or violated a condition of probation or release. The State did not present any evidence at the hearing on January 23, 2014. The juvenile court relied upon the instanter order and affidavit in support received from another Section of court. However, defense counsel did not object to the add-on status hearing being held and did not state an objection on the record to the juvenile court’s order on that date. On January 30, 2014, M.J. filed a motion for immediate release on the basis that there had been no continued custody hearing held or bail set for M.J. pending adjudication. The juvenile court denied the motion and M.J. sought supervisory review from this Court. At that time, this Court declined to exercise supervisory jurisdiction. supra note 3. M.J. does not seek appellate review of the juvenile court’s pre-adjudication judgment on January 23, 2014 or the denial of the motion for immediate release.

. "The court should impose the least restrictive disposition authorized by Articles 897 through 900 of this Title which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society.” La. Ch. C. art. 901(B).

. The juvenile court has a responsibility to consider the well-being and safety of juveniles, including whether they may benefit from alternatives to commitment.
The record reflects that the juvenile court considered and granted the request of M.J.’s mother to relieve her of custody and financial support of MJ. After the juvenile court announced its disposition, M.J.’s mother requested that she be allowed to abdicate custody and financial support of M.J. and to place M.J. in the custody and care of the godmother, who was present in court. After a brief discussion with the mother, the godmother, and M.J., the trial court granted the mother’s request.